## Jack Early v. The State.

No. 3446.   Decided April 24, 1907.

**1.—Murder in Second Degree—Continuance—Materiality of Testimony.**

Where upon trial for murder the testimony of the absent witness would not have had any material influence as to the verdict of the jury, and no diligence was shown, there was no error in overruling the motion.

**2.—Same—Diligence—Continuance—Contradictory Testimony.**

Where upon trial for murder the motion for continuance did not state sufficient diligence, and the testimony of the absent witness was of a contradictory character, there was no error in overruling the motion.

**3.—Same—Jury and Jury Law—Opinion—Challenge for Cause.**

Upon trial for murder where a number of jurors stated that they had heard of the conviction of defendant at a previous trial, but there was no contention that they had formed any opinion as to the guilt or innocence of defendant, there was no error.

**4.—Same—Evidence—Declarations of Deceased—Res Gestae.**

On trial for murder, there was no error in rejecting testimony of witness for the defense with reference to a statement by deceased of what he might have done in a former altercation between himself and defendant, in no way connected with the difficulty in which the homicide occurred.

**5.—Same—Unconnected Incident—Evidence—Collateral Fact.**

Upon trial for murder, testimony that defendant shortly before the homicide drove about with a couple of negro women and in no way connected with the homicide, was not admissible.

**6.—Same—Deadly Weapon—Intent—Charge of Court.**

Where upon trial for murder the defendant did not actually slay the deceased and the knife used was conceded to be a deadly weapon, the court should not have charged under article 717, Penal Code, as to the means used in the homicide and the intent conveyed thereby.

**7.—Same—Misconduct of Jury—Telephone—Conversation With Third Party.**

On trial for murder it was reversible error to permit a number of the jurors to carry on conversation over the telephone with members of their families and other persons, without the consent and not in the presence of the court, and where it was not shown by the State by testimony of other witnesses than the jurors that the jurors had not been tampered with.

**8.—Same—Charge of Court—Resisting Officer—Arrest.**

Upon trial for murder, where the charge of the court did not assume that defendant assisted his codefendant in resisting an officer who tried to make an arrest, and other portions of the charge properly submitted the law on this phase of the case, there was no error.

**9.—Same—Self-Defense—Charge of Court—Reversible Error.**

Where upon trial for murder, the evidence showed that the defendant did not actually kill the deceased, or which called for a charge on self-defense, and such charge may have worked injury to the defendant, there was reversible error.   Following Monroe v. State, 81 S. W. Rep., 726.

**10.—Same—Defense of Another—Arrest.**

See opinion for a charge of court on defendant's right to interfere on behalf

of codefendant whom deceased was attempting to arrest for being drunk in public place, in connection with other portions of the court's charge, which was held not to be reversible error.

**11.—Same—Evidence—Animus—Rebuttal.**

Where upon trial for murder the case against the defendant was mainly supported by proof of his animus towards deceased growing out of a former difficulty between them, it was error to exclude testimony on part of the defense to show by expressions from defendant and the deceased to the witness that the former difficulty had been settled and the parties were friendly; the State not having proved by any direct evidence any actual participation by defendant in the difficulty. Brooks, Judge, dissenting.

Appeal from the District Court of Hill. Tried below before the Hon. W. C. Wear.

Appeal from a conviction of murder in the second degree; penalty, twelve years imprisonment in the penitentiary.

The opinion states the case.

*Morrow & Smithdeal,* for appellant.—On question of misconduct of jury: Article 728, Code of Crim. Proc.; McCampbell v. State, 37 Texas Crim. Rep., 611; Robinson v. State, 30 Texas Crim. App., 462; Mitchell v. State, 36 Crim. Rep., 318; Lankster v. State, 65 S. W. Rep., 373. On charge on self-defense: Monroe v. State, 81 S. W. Rep., 726. On question of admitting testimony of defendant's animus: Simmons v. State, 31 Texas Crim. Rep., 232; Poole v. State, 45 Texas Crim. Rep., 348. On question of collateral facts: Cesure v. State, 1 Texas Crim. App., 20. On question of weapon used and intent: Burnett v. State, 79 S. W. Rep., 551; Barbee v. State, 97 S. W. Rep., 1058. On question of charge on resisting officer: Harrell v. State, 37 Texas Crim. Rep., 615; Montgomery v. State, 43 Texas Crim. Rep., 304; James v. State, 44 Texas, 319; English v. State, 34 Texas Crim. Rep., 200; Glover v. State, 33 Texas Crim. Rep., 224; Miller v. State, 32 Texas Crim. Rep., 351; Ex parte Sherwood, 29 Texas Crim. App., 336; Garcia v. State, 57 S. W. Rep., 651.

*F. J. McCord,* Assistant Attorney-General; *J. E. Clarke,* County Attorney; *H. G. Hart,* Assistant County Attorney; *Walter Collins* and *B. Y. Cummings,* for the State.—On question of misconduct of jury: Angley v. State, 35 Texas Crim. Rep., 427; Ray v. State, id., 354; Powell v. State, 93 S. W. Rep., 544; Shaw v. State, 32 Texas Crim. Rep., 165; Kutch v. State, 32 Texas Crim. Rep., 184; Defriend v. State, 22 Texas Crim. App., 570.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree and his punishment assessed at twelve years confinement in the penitentiary; and prosecutes this appeal.

This is the second appeal of this case, it having been previously reversed and remanded at the fall term of this court in 1906. See 97 S. W. Rep., 82. The facts developed on this trial are substantially the

same as those on the former, and we refer to the statement of facts contained in that opinion.

Briefly summarized, the deceased was a policeman in the town of Mt. Calm in Hill County, and appellant and his companion Harmie Horn, who were related to each other, were on the way from a livery stable in said town to the boarding place of appellant some time about midnight, both being under the influence of liquor, Horn it seems was more under its influence than appellant; that the deceased had been out in the country that night and returned to the stable with the team shortly after appellant and his companion left the stable. As soon as deceased turned his team in, he left going in the same direction that appellant and his companion had gone. It appears that after overtaking the parties that he attempted to arrest Horn for drunkenness, when a fight ensued, in which the deceased lost his life. The testimony tends to show that Horn used a knife and deceased had a whip handle which he used as a club, and also a pistol. There. is some evidence that besides the wounds inflicted on deceased with a knife that a contused wound was inflicted on deceased's head; and the State's theory is that this may have been done by appellant with a pistol. There is also some evidence to the effect that a grudge existed between deceased and appellant, beginning some weeks prior to the homicide. In this connection there is also evidence that the parties had made friends after the former altercation. This is a sufficient statement in order to discuss the assignments of error.

Appellant made a motion for continuance, which the court overruled, and this is assigned as error. The application was based on the absence of the witnesses Hamp James and George Robertson. The court, in approving the bill of exceptions, as to the witness James, states that, as to him, "It- was developed by sworn testimony during the progress of the trial that he had left Hill County two or three months before the case was called for trial and that it was generally known in. the community of Mt. Calm that he had gone to Oklahoma Territory and it was so known at the time he left, and there was no effort made to procure his testimony, and consequently no diligence was used." In view of this explanation, it would seem that there was a lack of diligence to get the testimony of this witness. However, it is said that this witness would testify that Harmie Horn was not drunk. It does not occur to us that the testimony of this witness, if he would so swear, would have had any material influence as to the verdict of the jury in the light of all the other evidence in the case.

As to the witness George Robertson, it does not seem that diligence was used for him. Appellant seeks, however, to excuse his lack of diligence by saying that he did not discover the testimony of said witness before he had process issued for him. The testimony of this witness would be merely contradictory evidence; that is, testimony to impeach the State's witness Will Harriss; that is, he proposed to prove a different statement made by the State's witness Harriss a short time

after the homicide, which he states said witness would testify to on the trial. If it be conceded that the testimony of said witness would contradict the testimony of the State's witness Harriss, a new trial will not ordinarily be granted on account of impeaching testimony. We do not think the court erred in overruling the motion for continuance, or in overruling the motion for a new trial based on overruling the motion for continuance.

A bill of exceptions was reserved to the action of the court in the selection of the jury. A number of jurors answered that they had heard of the case against appellant and his codefendant Harmie Horn; that they had heard of the previous trials of said parties, and of their conviction and term of punishment, but that same would not influence them in finding a verdict; that among the jurors who sat on the trial of the case were J. B. Orenbaum, O. Bratcher, A. M. Johnson, J. C. Gunn, J. T. Mitchell, and W. E. Hayes who knew of the former conviction of appellant, and that appellant had in the meantime, before the taking of these jurors, exhausted his peremptory challenges, and the court overruled his challenge for cause on the ground assigned, and he was compelled to take said named jurors. In this action of the court there was no error. There is no contention, as we understand, that either of said jurors had any opinion formed as to the guilt or innocence of appellant caused from having heard of the previous trial and conviction, and the mere fact that they had heard of same did not disqualify them from trying this case.

Appellant complains at the action of the court in refusing to permit defendant to prove by Charlie Shaw that some time prior to the homicide and after the altercation in Shaw's barber-shop between appellant and deceased, that deceased stated to the witness Shaw that "it was a good thing he (Shaw) interfered in the difficulty when he did, because if he had not deceased would have knocked Early down with his pistol." In order to sustain his contention appellant refers us to a number of cases, but it does not occur to us that any of them sustain his contention. This was not a threat. It was a mere relation connected with a previous altercation of what the deceased said he would have done after the difficulty if he had not been interfered with; nor was it a part of the res gestæ of this difficulty. This difficulty did not grow out of that difficulty, nor, in our opinion, was the character of statement attributed to deceased of that kind which would tend to show who was the actual aggressor in the subsequent difficulty. If the altercation at the barber-shop had been a part of this difficulty, or if it had been even on the same day, the particulars of that former difficulty or what was said afterwards might serve to shed some light upon the homicide. In Everett v. State, 30 Texas Crim. App., 682; Nelson v. State, 58 S. W. Rep., 107, and Poole v. State, 45 Texas Crim. Rep., 348, referred to by counsel, the question did not come up at all as here presented. In all of said cases the testimony admitted was part of the res gestæ and showed appellant's state of mind towards deceased,

Vol. 51 Crim.—25.

and same was held admissible. In Poole's case the question was as to the state of mind and apprehension of appellant on the day of the difficulty and a very few minutes prior thereto, and what Poole said when he was informed that deceased was seeking him or was at a certain place waiting for him, was held admissible as showing Poole's state of mind and his desire to avoid a difficulty with the deceased. There was no such question here. We would further add that the testimony offered was no part of the details of the former difficulty; as heretofore stated it was not a threat, but merely a statement of deceased of what he might have done in the difficulty if he had not been interfered with. We fail to see how this testimony would have served the purpose of shedding any light on the subsequent difficulty in which the homicide occurred.

Appellant contends that the court committed an "error in allowing the State to show that when appellant came back to the livery stable, he left the stable in a buggy with a couple of negro women and was gone some half an hour. The contention is that this sort of evidence was inadmissible and went to the character of appellant. We think it was permissible to show the movements of appellant during that entire night, not only his visit to Axtell to get whisky, and his drinking whisky, and his return to Mt. Calm, but what he did after he arrived there. If his conduct and movements brought him in contact with circumstances calculated to bring him into disrepute before the jury, that was his own fault. It was part of the res gestæ; showed appellant's surroundings, and, however, such surroundings might reflect on him, he could not escape his environments, especially of his own choosing, nor could he complain that reference was made as to what he was doing that night, and as to his movements immediately preceding the homicide.

Appellant assigns as error the tenth paragraph of the court's charge, which is as follows: "The instrument or means by which the homicide is committed is to be taken into consideration in judging the intent of the party offending; if the instrument be one not likely to produce death it is not to be presumed that death was designed unless from the manner in which it was used such intent evidently appeared." Appellant contends that there is no pretext here that appellant himself slew deceased, but that his companion Harmie Horn did the killing, and if it be conceded that Harmie Horn committed the homicide with a knife, which was a deadly weapon, the effect of the charge was to fasten the act of Harmie Horn, together with the presumption flowing from that act upon appellant. Evidently from the character of the wounds and the weapon Horn was shown to have owned, it was a deadly weapon, and the court's charge, if appellant himself had used the weapon, while not called for, would not be erroneous; and we believe that the other portions of the charge sufficiently safeguarded the appellant's rights in the premises; because when the court came to apply the law to the facts the jury were distinctly told that if Harmie

Horn committed the homicide, that appellant must have acted with him and must have been actuated with the same intent which actuated Horn, before they could convict him. As we understand the cases, a charge of article 717 is not called for unless the weapon is of a non-deadly character; but if the weapon used in the homicide is unquestionably of a deadly character, then it is not error ordinarily to give said article in the charge. In some cases where the weapon is deadly and the defense is insanity or accident, it has been held that it might be error to give this article in the charge, but this was not such case.

In motion for a new trial appellant alleges misconduct of the jury. It was alleged in this wise, that the following jurors, to wit: O. Bratcher, R. L. Utley, J. M. London, Burt Mitchell, and G. E. Vessel, and other members of the jury, while they had the case under consideration, talked over the long distance telephones to their families and others without leave of the court or the consent of appellant or his counsel. As to these jurors the evidence shows substantially that five or six of the jurors, to wit: those named, and perhaps others, lived several miles from the county seat in the country; and in the presence of the deputy sheriff who had them in charge they were permitted to call their wives, and in one instance one of the jurors was permitted to call a lady who lived near his wife and talk to her over the phone. The talk was simply an inquiry after the condition of their families, and nothing was said with reference to the case on trial, and no allusion thereto was made. These conversations were by permission of the officer in charge of the jury; he heard in almost every instance what was said at that end of the line, but not what was said at the other end of the line. The jurors themselves testified as to what their conversations concerned, and each and all testified that it was merely with reference to something at home and nothing in regard to the case. Appellant contends that this was such a separation of the jury, and conversing with other persons in regard to the case, as comes under article 817, Code Criminal Procedure, subdivisions 7 and 8, and article 725 relating to the separation of the jury. Article 725, relating to the separation of the jury has often been construed, and the rule adopted is that where an actual separation has been shown, the court will not speculate as to the effect of such separation, or that any undue influence was exercised on the jury while so separated, but will reverse the case because of such actual separation. See McCampbell v. State, 37 Texas Crim. Rep., 607; Lamar v. State, 39 S. W. Rep., 677; Walker v. State, 51 S. W. Rep., 234, and Neal v. State, Dallas Term 1907. This, however, was not an actual separation, as the jurors were altogether at the time, and were in the immediate custody of the sheriff. Subdivision 7 of article 817 provides for a new trial where a juror has conversed with some person in regard to the case. The examination developed that no conversation was had in regard to the case. Was it such misconduct as comes under subdivision 8? This article would seem to cover any character of misconduct calculated to

prejudice the rights of appellant and not provided for specially by other statutes. When these articles of the Code of Criminal Procedure were enacted there was no such thing as a telephone, and evidently the law makers did not provide against the use of such an instrument by a jury, as they could not have foreseen this modern improvement in the development of our civilization. However, it must obviously appear that by the use of this means a juror might be tampered with and in the very presence of the officer who has him in charge, and there ought to be some special legislation on the subject. The question, as it here presents itself to us, is: was any injury shown or suggested in the testimony in regard to the conduct of these jurors in talking over the phone to members of their respective families? The jurors were critically examined and nothing was disclosed calculated to injure appellant. We accordingly hold the court did not err in overruling the application for a new trial predicated on this ground.

Appellant objected to the charge of the court on arrest, insisting that it was a charge on the weight of testimony. We have examined said charge, and in our opinion it is not subject to the criticism of appellant. We do not believe the charge assumes that appellant assisted Harmie Horn in resisting the officer in the exercise of his duties, nor did it authorize the jury to conclude from the charge that it was not even necessary for Horn to be drunk in a public place in order that Calloway should have the right to arrest him. This particular charge does not treat of the use of force required to make the arrest, or the use of more force that was necessary to consummate the arrest. As far as the charge went, it was, in our opinion, a proper charge. Other portions of the charge related to the question of force and the use of more force on the part of Calloway than was necessary to accomplish the arrest and to define appellant's rights under such circumstances. Of course, the officer had no right to make the arrest in a wanton or violent manner, or to use more force than was reasonably necessary, but we think a review of the whole charge will show that appellant's rights were sufficiently safeguarded on this subject.

Appellant says there was no testimony authorizing the court to give a charge on self-defense. The case is one of circumstantial evidence, and appellant's complicity in the offense, or his want of complicity, is to be measured by the circumstances as they were developed in the testimony. Appellant claims that he had nothing whatever to do with the killing of Calloway, but the State introduced testimony more or less inculpating appellant, and he might have just ground to complain had the court failed to give a charge on self-defense. At any rate, we fail to see how it could have injured him. It was not like the case where the claim is that defendant was not present at the homicide at all; in other words, where his defense is an alibi.

Appellant complains at subdivision 21 of the court's charge, which is as follows: "Now, if you have a reasonable doubt from all the evi-

dence as to whether the said Harmie Horn was drunk in a public place and as to whether if he was drunk, the deceased, Terrell Calloway, was attempting to arrest him, or even if you should believe beyond a reasonable doubt that said Harmie Horn was drunk and that said Terrell Calloway· was trying to arrest him, in the event you should have a reasonable doubt from the testimony as to whether the said Terrell Calloway at-· tempted· to use or was using more force than was necessary to make said arrest and that the said Terrell Calloway struck the said Harmie Horn with an instrument reasonably calculated to produce death or serious bodily injury, and the said Terrell Calloway and the said Harmie Horn engaged in a struggle and in the night-time, and that while they were so engaged in a struggle and the contest was going on between the said Terrell Calloway and the said Harmie Horn under such circumstances as that it reasonably appeared to the defendant that the said Terrell Calloway had unlawfully assaulted and was about to kill the said Harmie Horn or inflict upon the said Horn serious bodily injury, then you will acquit the defendant. ˙ In this connection, however, you are charged that the law which justifies a homicide by one to prevent the infliction of serious bodily harm or death, by the deceased upon another applies to a defensive and not an offensive act, and is limited to necessity or apparent necessity and cannot exceed the bounds of mere defense and prevention.  If therefore you believe from the evidence ˙beyond a reasonable doubt that the defendant interfered in the combat between the deceased and Harmie Horn for the purpose of preventing the deceased from killing Harmie Horn or inflicting upon him some serious bodily harm, but you should believe beyond a reasonable doubt that the defendant engaged in said combat knowing that the said Harmie Horn was drunk, and that the said Terrell Calloway was trying to arrest him on account of his being drunk, and to assist the said Harmie Horn in an unlawful assault upon the deceased, then the doctrine of defense of another would not apply and he would not be justifiable and this would be the case no matter to what extremity he may have been reduced in the course of· the difficulty."  This was a charge which, in the first portion thereof, instructed the jury as to appellant's right to interfere in case his friend Harmie Horn was put in danger of his life or serious bodily injury from an assault by Terrell Calloway. We think this portion of the charge very properly instructed the jury that appellant had a right to interfere if they had a reasonable doubt whether Harmie Horn was drunk in a public place and Terrell Calloway was attempting to arrest him, or if Calloway attempted to use more force to make said arrest.  In the latter portion of the charge the jury were instructed that if appellant knew Harmie Horn was drunk and deceased was trying to arrest him, he had no right to interfere to keep him from being arrested, and in such case the doctrine of defense of another would not apply.  In the twentyieth paragraph of the court's charge, just preceding the above charge, the jury were fully instructed in regard to the arrest or attempted arrest of Harmie Horn by deceased Calloway,

and appellant's right to interfere on behalf of Horn in case the jury believed the arrest of Horn illegal; that is, if it was illegal either by reason of Horn not being drunk, or was rendered illegal by Calloway using more force than was necessary and appellant interfered; under such circumstances he was authorized to repel force by force to prevent said arrest. Of course, the jury took this charge, and all the court's charges on this subject, and considered them in connection with one another, and so considered we do not believe the court's charge was erroneous; certainly not to the extent of constituting reversible error.

Appellant insists that the evidence does not sustain the verdict. We have carefully examined same, and in our opinion we believe it does.

There being no errors in the record, the judgment is affirmed.

*Affirmed.*

Brooks, Judge, absent.

### ON MOTION FOR REHEARING.

#### June 19, 1907.

HENDERSON, Judge.—Appellant has predicated a motion for rehearing based on several grounds heretofore treated in the original opinion by the court, and on one or two grounds not discussed. Among other things, he insists that the court was in error in holding that the misconduct of certain jurors in talking over the phone to members of their families and others was without prejudice to him, and in this connection he suggests that the court did not discuss articles 728 and 729 Code Criminal Procedure, and he further suggests that said articles have direct reference to such misconduct as said jurors were guilty of. It is true, as stated, that said articles were not discussed in relation to said matter, and it may be further observed that they have a more direct bearing on the question than articles mentioned in the opinion. Article 728 uses this language: "No person shall be permitted to be with the jury while they are deliberating upon a case, nor shall any person be permitted to converse with a juror after he has been impaneled, except in the presence and by the permission of the court, or except in a case of misdemeanor where the jury have been permitted by the court to separate, and in no case shall any person be permitted to converse with a juror about the case on trial." Article 729 provides, "Any juror or other person violating the preceding article shall be punished for contempt of court by fine not exceeding $100." As stated in the opinion, at the time of the passage of these articles there was no such invention in existence as a telephone, and the method of talking by phone was then unknown; but if said articles are broad enough to include a conversation over a phone, of course, said articles will be applied, and such conversations embraced within the spirit of the prohibition. As heretofore intimated, we believe that the purpose of said articles was to inhibit any character of conversation between the jurors and other persons,

except as therein provided.  Not only would a conversation, as we ordinarily understand it, between persons directly talking to each other, but indirectly talking to the jurors through others or talking to the jurors by means of signs or gestures, as well as the modern method of talking over phones, though the persons be not actually present, would be prohibited by both the letter and the spirit of this statute.  Indeed, we apprehend that if jurors are permitted to talk with persons indiscriminately over phones out of the presence of the court, and without the permission of the court, it would be fraught with more danger to the integrity of the jury system than if such conversations were had between persons directly present with the jury and in view of the officer, and the establishment of such a precedent would be calculated to emperil the integrity of the jury and the guarantee of a fair trial by an impartial jury.  It is insisted that where it is shown that a conversation occurred between members of the jury and others over the phone not in the presence and not by permission of the court, as here, that either one of two rules should apply; first, that it will be absolutely presumed that injury occurred to appellant, or if this presumption is not indulged, that the burden is on the State to show that such injury could not have occurred.  With regard to the misconduct of the jury, which related to their separation, which is analogous to the proposition herein involved, since McCampbell v. State, 37 Texas Crim. Rep., 607, the doctrine therein announced has been followed without a break, to wit; that where a separation of the jury trying a felony case has been shown and opportunity presented for the juror or jurors to be tampered with, that injury to appellant will be presumed.  Whether this rule be applied and adopted here or the milder one to the effect that where jurors are shown to have conversed with others, that the burden is then on the State to show what the conversations were about, and that no possible injury accrued to appellant, the result, so far as this case is concerned, must be the same.  On the examination of this issue before the court, some of the jurors were examined but not all; they stated that they talked with their wives and in one instance one of the jurors with another lady neighbor about home matters; all of the jurors were not examined.  The deputy sheriff was examined; he heard some things that the jurors said, but he could not hear what was said at the other end of the line.  None of the parties conversed with by jurors were summoned or examined.  Heretofore, we have held with reference to the separation of jurors that these would be liable if tampered with to suppress the fact and that, therefore, little reliance should be placed on their testimony, and the same rule would apply with reference to conversations.  So that the necessity for the examination of others than the jurors with whom such conversations may have occurred seems to be necessary.  This was not done.  We accordingly hold that the burden thus shifted to the State was not discharged by it.  We believe in the face of the statutes above cited that it would be a bad precedent to hold that jurors out of the presence of the court, and not by permission of the court, should be per-

mitted to converse with other persons over phones, and certainly where such conduct does occur it should be held obligatory on the State to show beyond any question that the jurors were not tampered with. Any other rule would destroy a barrier set up by the Legislature intended to protect the purity and integrity of the jury box.

We held in the original opinion that the charge of the court on self-defense, though not called for, was not calculated to injure appellant. In the motion for rehearing appellant invokes the case of Monroe v. State, 81 S. W. Rep., 726, and he calls our attention to the facts of that case as being in line with the facts of this case. An examination of the case cited bears out appellant's insistence. There we held: "In the absence of testimony a charge of this character was calculated to involve appellant unduly and prejudice his rights with the jury." A more careful examination of the record in this case leads us to believe that the facts of the case did not authorize the court to give a charge on self-defense, and we are not prepared to say that such a charge may not have worked injury to appellant in the minds of the jury. For other authorities on this subject, see Mooney v. State, 65 S. W. Rep., 926; Randell v. State, 64 S. W. Rep., 255; Bell v. State, 56 S. W. Rep., 913; Ballew v. State, 34 S. W. Rep., 616, and Spillman v. State, 38 Texas Crim, Rep., 607.

In the original opinion we failed to treat one of appellant's assignments predicated on his twenty-sixth bill of exceptions, relating to the excluded testimony of Cleve Sanders. Appellant sought to prove by this witness that after the difficulty in the barber-shop between Calloway and Early that they had made friends. It appears that the State in order to show animus on the part of appellant towards deceased proved a difficulty between Early and deceased about two or three weeks before the homicide in the barber-shop at Mt. Calm, and this was followed up by proof on the part of the State by the witness Stirman; that on the day preceding the homicide appellant had used language manifesting ill-will towards deceased on account of the previous difficulty at the barber-shop, and in addition to this testimony indicating ill-will, the State also proved by Guion that appellant had said Calloway was a rascal, and he could not arrest him. In the face of this testimony on the part of the State, appellant himself testified that he and deceased had made friends with regard to the difficulty at the barber-shop subsequent thereto. In addition to this he offered to show by the witness Sanders that he knew the defendant and deceased were friendly after the difficulty at the barber-shop, because he had been informed by the deceased and the defendant that they had made up, and had agreed to forget and overlook said trouble, and that deceased and defendant informed said witness after the difficulty their feelings were friendly towards each other. We believe this testimony was admissible. The State's case against appellant was purely of a circumstantial character. The State proved appellant was present when Harmie Horn slew deceased, but was not able to prove any direct act

on the part of appellant showing any actual participation in the diffi-
culty. The case against appellant was mainly supported by proof of
his animus growing out of a former difficulty between himself and de-
ceased at the barber-shop, and any proof, it occurs to us, was admissi-
ble which would show that the former difficulty had been settled and the
parties were friendly, and here appellant proposed to show it both by
expressions from appellant and from the deceased to the witness
Sanders. This could hardly be said to be purely self-serving declara-
tions; certainly not coming from deceased, and we hold this testimony
was authorized. See Gaines v. State, 38 Texas Crim. Rep., 229;
Turner v. State, 46 S. W. Rep., 830, and State v. Leabo, 84 Mo., 168.

On another trial of the case we would suggest that the court do not
instruct the jury with reference to the presumption arising from the
use of a deadly weapon in committing the homicide. We would further
suggest that the court eliminate so much of the testimony introduced on
the previous trial showing that appellant, shortly before the homicide,
drove a couple of negro women from the livery stable to some place in
the suburbs of Mt. Calm, and was gone about half an hour. A dis-
cussion by appellant in his motion for rehearing, as to this matter, and
his illustrations, convinces us that said testimony was appropriated to
an improper use.

The motion for rehearing is accordingly granted, and the judgment
reversed and the cause remanded.

Brooks, Judge, dissents.

*Reversed and remanded.*