## Philip Bryan v. The State.

### No. 1022. Decided June 23, 1911.

### Rehearing denied October 11, 1911.

**1.—Bigamy—Indictment—Precedent.**

Where, upon trial of bigamy, the indictment followed approved precedent, there was no error. Following McAfee v. State, 38 Texas Crim. Rep., 124, and other cases.

**2.—Same—Jury and Jury Law—Challenge.**

The fact that one of the jurors who tried the defendant had been a member of the grand jury which found the bill against the defendant, is not a disqualification, but ground for challenge; and where the defendant failed to challenge the juror individually, but only requested that the entire panel be discharged; and it appeared that the juror was not present when the case was considered and the bill returned, there was no reversible error; defendant having accepted the juror upon his voir dire.

**3.—Same—Misconduct of Jury—Telephone.**

Where the State assumed the burden and showed that no possible injury resulted to the defendant from the fact that some of the jurors talked to their families over the telephone, there was no reversible error. Following Speer v. State, 57 Texas Crim. Rep., 297, and other cases. Distinguishing Early v. State, 51 Texas Crim. Rep., 382.

#### 4.—Same—Evidence—Former Marriage—General Reputation.

Although general reputation alone is not sufficient proof of marriage, yet taken in connection with the evidence of cohabitation and the defendant's admission, it is competent to support a conviction for bigamy; and there was no reversible error, after this character of proof had been established, to permit the second wife to testify.

#### 5.—Same—Evidence—Declaration of Defendant.

Upon trial of bigamy, after the former marriage was established by prima facie evidence, there was no error in permitting the alleged second wife to testify that she was married to defendant, and that defendant declared, after the said second marriage, that he had a lawful wife and children, etc., and to identify her signature and that of the defendant to the marriage certificate.

#### 6.—Same—Accomplice—Particeps Criminis.

Where it was shown that the alleged second wife was not the legal wife of defendant, her testimony was admissible against him, and there was no error in the court's failure to charge on accomplice testimony, and she was not particeps criminis as she was ignorant of defendant's former marriage at the time she married him.

#### 7.—Same—Evidence—Marriage License—Return.

Upon trial of bigamy, there was no error to admit in evidence certified copies of the different marriage licenses of the two alleged marriages, and the return thereon; and this although it had not been shown that the defendant was the identical person named in the license.

#### 8.—Same—Evidence—Husband and Wife.

Declarations and communications between husband and wife are admissible in evidence when heard by a third person.

#### 9.—Same—Evidence Brought Out by Defendant.

Where it was shown by the record on appeal that the evidence objected to was brought out by the defendant, there was no error.

#### 10.—Same—Evidence—Acts of Intimacy.

Upon trial of bigamy, there was no error to show specific acts of intimacy between defendant and his alleged second unlawful wife, which were seen and overheard by a third person.

#### 11.—Same—Charge of Court—Special Charges.

Where the main charge of the court submitted all the issues raised by the evidence, as required by law, there was no error in refusing special charges thereon.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. Robt. B. Seay.

Appeal from a conviction of bigamy; penalty, five years imprisonment in the penitentiary.

Leaving out formal parts, the indictment charged that the defendant did unlawfully marry in the County of Dallas in the State of Texas, and had for his wife one Laura Russey, and while the said Laura Russey was living did, in the County of Dallas and State of Texas, on the 22d day of November, A. D. 1907, marry and have for his wife one Minnie Robison, and afterwards on the 22d day of November, A. D. 1907, did unlawfully and feloniously have both the said Laura Russey and the said Minnie Robison for his two wives at one and the same time, contrary to the form of the statute in such

cases made and provided, and against the peace and dignity of the State.

*Lattimore, Cummings, Doyle & Bouldin,* for appellant.—This indictment is repugnant and inconsistent in that portion of same as set out in this assignment of error wherein it is alleged that "the said Philip Bryan 'then and there unlawfully have both the said Laura Russey and Minnie Robison às his two wives at one and the same time,'" for the reason that, if he unlawfully had as his wife Laura Russey and unlawfully had as his wife Minnie Robison, then neither of said persons was his lawful wife, and consequently appellant could not be guilty of the offense of bigamy without there being "a lawful former wife then living," to whom he must be, at time of second marriage, then and there lawfully married. Hammong v. State, 16 S. W. Rep., 99; Roberts v. State, 2 Texas Crim. App., 4; Thomas v. State, 18 Texas Crim. App., 213; Raymond v. People, 9 Texas Crim. App., 444; State v. Lockwood, 24 S. W. Rep., 1015; Shuman v. State, 34 Texas Crim. Rep., 69; Westbrook v. State, 23 Texas Crim. App., 401; Hardeman v. State, 16 Texas Crim. App., 1; English v. State, 30 Texas Crim. App., 470.

This indictment is not sufficient under the decisions of our court. Esser v. State, 66 S. W. Rep., 776; Vinsant v. State, 60 S. W. Rep., 550; Bryan v. State, 111 S. W. Rep., 745; May v. State, 4 Texas Crim. App., 424; McAfee v. State, 41 S. W. Rep., 627; Davis v. Comm., 13 Bush, 318; Mount v. Commonwealth, 1 Duv. (Ky.), 90; Commonwealth v. White, 18 B. Mon. (Ky.), 492; Commonwealth v. Perrigo, 3 Metc. (Ky.), 5; Huntsman v. State, 12 Texas Crim. App., 619; United States v. Mills, 7 Pet., 138; United States v. Cook, 17 Wall., 168; United States v. Cruikshank et al., 92 U. S., 542; Hewitt v. State, 25 Texas App., 722; State v. McCormick, 22 Texas, 297; Alexander v. State, 29 Texas, 495; Pennoyer v. Neff, 95 U. S., 714; 4 Cyc., p. 698.

This indictment is further insufficient in that it does not allege that, at the time of the second marriage to Minnie Robison, the first marriage was still legally in existence; consequently every allegation of that indictment may be taken as true; that is, Philip Bryan may have in the County of Dallas and State of Texas, on the 13th of December, A. D. 1896, lawfully married and had for his wife one Laura Russey, and while the said Laura Russey was still living, the said Philip Bryan might, in the County of Dallas and State of Texas, have married and had for his wife one Minnie Robison, and still he would not have been guilty of the offense of bigamy because he might have been divorced from the said Laura Russey, and consequently you may take every allegation of said indictment as true, and it does not allege acts of defendant which are incompatible with his innocence, and in civil cases the doctrine is well recognized that the burden is upon the party asserting the invalidity of the second marriage to not only al-

lege its invalidity, but prove the same, or else the law presumes that the first party had been divorced at the time of the second marriage. 8 Ency. of Evidence, 463 and 467; Wichita Land & Cattle Co. v. Nixon et al., 19 S. W. Rep., 560; Carroll v. Carroll, 20 Texas, 732; Ingersoll v. McWillie, 30 S. W. Rep., 56; Yeates v. Houston, 3 Texas, 443; Simmons v. Simmons, 39 S. W. Rep., 639; 1 Bishop, Marriage and Divorce, secs. 437 to 439; 5 Cyc., 689 to 691, and authorities cited under note 17.

On question of defendant's challenge to the array of jurors because one member of the jury had been a member of the grand jury: Greenwood v. State, 34 Texas, 334, 24 Cyc., 278; 17 Am. & Eng. Ency. of Law, 753; Hanks v. State, 21 Texas, 526; Sewell v. State, 15 Texas Crim. App., 56; Lester v. State, 2 Texas Crim. App., 432; Monroe v. State, 5 Ga., 85.

Upon question of misconduct of jury: McCampbell v. State, 37 Texas Crim. Rep., 607, and cases cited in opinion.

Upon question of refusing special charges: Goad v. State, 102 S. W. Rep., 121; 5 Cyc., 698; 8 Ency. of Ev., 463-67.

Upon question of admitting testimony of second wife and declarations of first wife: Boyd v. State, 33 Crim. Rep., 470; Bryan v. State, 114 S. W. Rep., 811; Knapp v. State, id., 836.

Upon question of court's failure to charge on accomplice testimony: Miles v. United States, 103 U. S., 304; Goad v. State, 102 S. W. Rep., 121.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—In this case appellant was indicted by the grand jury of Dallas County, charged with the offense of bigamy. Upon conviction his punishment was assessed at confinement in the penitentiary for a period of five years.

1. Appellant filed a motion to quash the indictment. The indictment follows the form by Mr. Bishop in his work on Forms, section 862, and is in accordance with the decisions of this court in McAfee v. State, 38 Texas Crim. Rep., 124; Bryan v. State, 54 Texas Crim. App., 18; Vinsant v. State, 42 Texas Crim. Rep., 413.

2. The next question raised is that juror Frank F. Sliger was a member of the grand jury that returned the bill of indictment against appellant. Appellant alleges in his bill that he did not learn this fact until after the jury had been sworn and empaneled to try the case, and he then called the court's attention to it, when the court asked appellant what he desired done in the premises, when appellant demanded that the entire jury empaneled be discharged. This the court declined to do, but again asked what they desired, when counsel replied: "We ask that the law be complied with." The court thereupon ordered the case to proceed. In the qualification of this bill it is shown that, on hearing the motion for a new trial, this juror was

sworn, and testified he was not with the grand jury at the time this bill was under consideration, and had never heard of the case. · He was absent at New Orleans two weeks during the session of the grand jury, and, this must have been one of the cases examined, bill found and returned during his absence.

As thus qualified, this bill presents no error. This is not a disqualification, but ground for challenge. The defendant examined the juror on his voir dire and accepted him. When he learned that the juror was a member of the grand jury that returned the indictment, he did not challenge the juror individually, but only requested the entire panel be discharged. Inasmuch as it is shown that the juror was not present when the case was considered and bill returned, no possible injury resulted to appellant. This question is treated at length in the case of Self v. State, 39 Texas Crim. Rep., 455, in which it is held that this presents no ground for a new trial, in the absence of injury shown.

3. In his third bill of exceptions it is alleged that the jurymen talked over the telephone to some one after being empaneled on the jury. It seems some members of the jury talked to their families. In the qualification of the bill the court says: "On the motion for a new trial the evidence of these jurors and the members of their families was taken, and all they had done was let their families know they were on the jury." As thus qualified the bill shows no error. In Early v. State, 51 Texas Crim. Rep., 382, 103 S. W. Rep., 868, it is held that, where a juryman talks over the telephone, the burden is on the State to show no injury. The State in this instance assumes the burden and shows no possible injury. See also Speer v. State, 57 Texas Crim. Rep., 297, and Parshall v. State, decided at this term of court but not yet reported.

4. In his next bill of exceptions defendant complains that Minnie Robison was permitted to testify. Minnie Robison is the person appellant is alleged to have married while his first wife was living, and the contention is made that she should not have been permitted to testify until positive proof had been made that defendant was a married man and his wife living at the date of his marriage to Minnie Robison. Article 348 of the Penal Code provides that in trials for the offense of bigamy proof of marriage by reputation shall not be sufficient. In construing this article of the statute this court has held: "Although general reputation alone is not sufficient proof of marriage, yet, taken in connection with the evidence of cohabitation and defendant's admissions, it is competent to support a conviction for bigamy, provided the jury is satisfied beyond a reasonable doubt of the fact of a valid marriage." Dumas v. State, 14 Texas Crim. App., 464; Adkisson v. State, 34 Texas Crim. Rep., 296. The admission of the defendant that he is a married man, and that his wife still lives, is competent evidence against him. Gorman v. State, 23 Texas, 646;

Boger v. State, 19 Texas Crim. App., 91; Bell v. State, 33 Texas Crim. Rep., 163.

T. M. Millican testified that he knew defendant and his first wife, and they had lived on adjoining lot to him; that he knew defendant and his first wife before he married Minnie Robison; that defendant's first wife's maiden name was Laura Russey, and that he knew her father, Dr. Russey. That at the time defendant married Minnie Robison he had a wife and five children. That the first wife was living three months prior to this trial and subsequent to the second marriage. That he had seen defendant at the home of his first wife subsequent to the marriage with Miss Robison; that is, at the home of the woman he had been living with as his wife. That he remembered hearing of the marriage of defendant to Miss Robison; about that time defendant had left his family. He was gone four or five weeks, when he appeared again. They were recognized in the community as man and wife. He testified he was in their home a number of times during appellant's sickness. That after defendant was arrested, charged with this offense and given bond, he saw him with his first wife at their home again, and he was around the place like a man generally is.

On cross-examination he testified: "I know they were man and wife just like I know any other people are man and wife." Mrs Millican testified that defendant's first wife was named Laura Russey prior to her marriage. That she knew her as Mrs. Bryan; that they had five children, and they had lived neighbors to her for eighteen months. That she saw him frequently at the home of Mrs. Bryan after his arrest charged with bigamy. That by general reputation she knows that defendant and Mrs. Laura Bryan are man and wife, and saw them living together in the same house. That she had seen Mrs. Laura Bryan about two months prior to this trial.

H. G. Musick testified that he and defendant formerly worked together for the Fort Worth Oil Company, and defendant introduced the first Mrs. Bryan to him as his wife. That she frequently came there and brought defendant his lunch. From general reputation he knew them to be man and wife.

T. J. Cartwright testified that he knew the defendant and the woman he was living with as his wife, and they bought goods from him. They would come in the store together. "He said he would like to run an account with me weekly, and that he would send me his check every Saturday or Monday. He wanted me to furnish his wife with groceries, and that he would send his check to me, and that I could take out of the check whatever the grocery bill came to and give the balance to his wife." He further testified that the first wife was living at the time of this trial.

This, we think, sufficiently showed by general reputation, by his admission to Musick and Cartwright, and by the fact that he lived with her and she had children which he recognized and treated as his

children, is sufficient to make such a *prima facie* case that he was married to Laura Russey as to render admissible the testimony of Minnie Robison, and the bill presents no error.

5. Neither was there error in permitting Minnie Robison to testify that she married appellant in Dallas on November 22, 1907, Rev. Geo. Truett performing the ceremony. That he represented himself as an unmarried man. That they lived together in Dallas until the 18th day of December, when she left him. That he confessed to her that he was married and had five children at the time he married her. She stated that defendant told her the maiden name of his first wife was Laura Russey, and they lived at Riverside, in Fort Worth. Neither was it error to permit her to identify her signature to the marriage certificate of herself and defendant. If the evidence was sufficient to show that Miss Robison was not the legal wife of defendant and her testimony admissible, it can not be contended that the evidence is insufficient to sustain this conviction, and there was no evidence calling for a charge that she was *particeps criminis* or an accomplice, for she testifies she did not know he was married at the time she married him, and there is no evidence to suggest that she did know it.

6. Neither was there error in admitting a certified copy of the marriage license, dated December 12, 1896, issued to P. A. Bryan and Laura Russey, with the minister's certificate that the marriage occurred on December 13, 1896. This had been filed in the office of the county clerk of Dallas County in February, 1897, and duly recorded. Defendant had been given the notice required by law and copy filed more than three days prior to this trial. It is true no witness had been introduced to how that defendant was the identical person named in that marriage license, but this went to its weight and not to its admissibility. The license and return showing a marriage to Miss Robison were also admissible for the same reasons.

7. These are all the bills of exception in the record, but appellant has filed in this court an affidavit that he presented to the judge three other bills of exception, and attaches copies of such bills to the affidavit. What action the trial court took on these bills it is not made to appear in the affidavit, the counsel only certifying that he delivered them to the court, and on numerous occasions asked the court to approve or disapprove them, but could not get him to do so. By examination of the copies of the bills attached to the affidavit and motion for *certiorari,* we find that number three relates to the testimony of the witness T. M. Millican, and all the testimony is admissible except the statement, "she introduced herself as Mrs. Bryan." This, by reference to the statement, is shown to have been brought out by appellant on cross-examination, and as there was no motion to exclude same it would not present reversible error.

The next bill relates to the testimony of Mrs. Millican. Declarations and communications between husband and wife are admissible

when heard by a third person. A person can always testify to the acts and conduct of the person on trial showing intimacy between him and his alleged wife in a prosecution for bigamy. This one does from their own knowledge, and is not hearsay.

Neither does the other bill present reversible error. It is always permissible to show a specific act of intimacy between one who is prosecuted for bigamy and the woman who is alleged to be his wife, and, as before stated, conversations between husband and wife overheard by a third person are admissible, and especially so when the conversation is addressed to the witness testifying and in the presence of each other. So if we should consider these bills they do not present any reversible error.

8. There were a number of special charges requested, but we are of opinion that the court's main charge submitted all the issues as fully as required, and there was no error in not giving them.

*Affirmed.*

[Rehearing denied October 11, 1911.—Reporter.]