## WILBURN MONROE HALL v. STATE

No. 26,688. January 23, 1957.
Appellant's Motion for Rehearing Overruled, March 27, 1957.
Appellant's Second Motion for Rehearing Overruled
(Without Written Opinion) May 1, 1957.

574

*Russell F. Wolters,* Houston, for appellant.

*Dan Walton,* District Attorney, *Eugene Brady* and *Thomas D. White,* Assistants District Attorney, Houston, and *Leon Douglas,* State's Attorney, Austin, for the state.

BELCHER, Judge.

The conviction is for murder; the punishment, death.

The evidence shows that the deceased, Samuel Ross Mac-Gregor and his wife, Joy Lee MacGregor, were separated on December 17, 1954. Shortly after their separation the deceased spent seven months in a mental institution in Austin, then after his release on September 26, 1955, returned to Houston where he lived in the home of his mother and step-father, Mr. and Mrs. W. C. Clayton. Mrs. Clayton operated a cafe which was located next door to her residence. Joy Lee, who lived in Houston, went to the cafe about 4:45 P.M., April 1, 1956, visited with Mrs. Clayton, and when her husband (the deceased) arrived, went outside, talked with him a short time and left. About 11 P.M., after the deceased had retired and was asleep, the discharge of a gun was heard and an investigation by the Claytons and the officers showed that the deceased had been shot from the outside of the residence through a window while he lay in bed asleep with his back to the window, and the top of his head had been blown off as the result of his having been shot by a .12 gauge shotgun.

The proof shows that the appellant had become fond of Joy Lee, the deceased's wife, and had been keeping company with her for about four months, and that she had told him that she had been abused and mistreated by the deceased.

Deputy Sheriffs Irby and Hutchinson, being unable to locate the appellant and Joy Lee immediately after the deceased was shot, watched for them near her apartment until a car appeared about 6 A.M. They approached the car and found the occupants to be the appellant and Joy Lee. Among appellant's first words spoken to the officers were "that Joy didn't know anything about it, I am the one you want," and he later asked them "if Sam was dead." A search of the appellant revealed four .12 gauge shotgun shells in his left pocket. They asked appellant where the shotgun was that he used and he replied that it was in the car under the front seat which they found as he had told them. The gun was loaded. Appellant told the officers that he had thrown the empty shell away. They also found nineteen .12 gauge shells in the glove compartment of the car.

The state introduced appellant's voluntary written statement made to Deputy Sheriff John S. Fox concerning the shooting of Samuel Ross MacGregor and it was admitted in evidence without objection. It reads in part as follows: "My name is Wilburn Monroe Hall, I am 28 years old * * * . Sometime in December, 1955, I met Joy Lee MacGregor * * * . I knew that she was married to Sam MacGregor and (had) three children by him but had been seperated from him for some time. * * * Yesterday, April 1, 1956, Joy, her children and I went to Huf Smith in a 1953 Ford which I had stolen off of a lot on Washington Ave. on March 27, 1955. We stopped at a cafe in Huf Smith and the children and I got out of the car, Joy Lee went on down to Sam's Mother's place. She went there to see Sam as he had told her on the phone about a week and a half ago to come and see him about straightening their property. * * * I got the gun and shells with the intention of going to Huf Smith and killing Sam. I drove to Huf Smith and parked the car just up the street from Sam's Mother's place. I put a few of the shells in my pocket and *and* taking the gun I walked down the road and along the south side of Sam's Mother's place and climbed over a barb wire fence and walked around back of the beer joint and then back of the house. The house was dark so I came out the side gate between the house and the beer joint into a drive way and looked in the window of the beer joint to see if Sam was there. * * * Then I went to the window of the back room of the house and saw Sam lying on his side on the bed with his back to me. While I was

looking at Sam I saw the old man come from the back and go thru Sam's room to the front part of the house. I stood at the window a little bit after the old man had gone from the room and then I raised the gun and aimed it at the back of Sam's head and fired. I had the end of the barrel of the gun about a foot or two from the window when I fired. As soon as I fired I went back the way I had come in to the place and got in the car which I had headed for Houston and come on back to town. After I shot Sam I reloaded the gun and put the empty shell in my pocket, I threw it away later. I don't know where. I went to the Grove on Jensen Drive and saw Joy Lee who was still with Jack. She told me to meet her in about an hour at her house. I don't know what time I shot Sam but it was 12:15 A.M. when I got to the Grove. I picked Joy Lee up about 1:30 A.M. and we rode around and parked for a while. We came back and stopped about two houses away from Joy Lee's and the officers came to the car and placed us under arrest this was about 6:00 A.M. this morning, April 2nd, 1956. I still had the shotgun and the balance of the shells in the car at that time. * * *"

In rebuttal the state called Dr. C. W. Dwyer who testified that he had been the psychiatrist for Harris County for ten years; that he had examined the appellant and in his opinion he was of sound mind and knew the difference between right and wrong.

Appellant, testifying in his own behalf, stated that the witnesses for the state had testified truthfully, that he had not been mistreated, and admitted that he made the written statement to Deputy Sheriff Fox which had been introduced in evidence, but stated that he was not under oath when he made said statement. He further testified that he was not guilty but knew how the killing occurred because he heard two strangers making plans to kill the deceased; and that he confessed to the crime and signed the statement because he had a past record and knew that the officers would investigate Joy Lee in connection with deceased's death and try "to make a big fool out of her." He admitted his affection for Joy Lee and that he would like to have her as his wife; and that he had heard that a wife could not divorce a husband while he was a mental patient.

J. W. Cooper, called by the appellant, testified that he didn't know whether the appellant knew right from wrong when he last saw him on March 24, 1956, but that he was then of unsound mind or under the influence of dope.

Appellant's brother, Woodrow Hall, testified that the appellant knew right from wrong but that he had the mind of a sixteen year old boy.

Joy Lee MacGregor, widow of the deceased, called by the appellant, admitted that she had been keeping company with and making love to the appellant; that she had told him that the deceased had shot at her three times and that they had had a fight; that the appellant told her about 1:00 A.M. that he "shot Sam," and that she later saw him that night and remained with him until 6 A.M.

The evidence is sufficient to support the jury's verdict.

There were no requested charges or exceptions to the charge submitted to the jury.

No formal bills of exception appear in the record. Six informal bills are presented.

Appellant complains of the use by a state's witness on direct examination of the words "Easter Sunday" which the court refused to delete.

In his oral argument and brief appellant urges that because of certain religious convictions concerning Easter Sunday, which is the date of the offense here charged, the appellant could have been injured if any juror possessed such convictions.

The record discloses the use of the words complained of numerous times during the examination of witnesses without objection. The record fails to support appellant's claim that the reference to Easter Sunday as the day on which the offense was committed was prejudicial to his defense. In the absence of such a showing we would not be authorized to reverse this conviction.

Appellant complains of the admission in evidence of testimony that "there was brains about four inches in diameter right over the left side of the dresser" and on the wall on the ground that it was not material.

Ordinarily, the physical facts and circumstances surrounding a homicide are admissible in evidence as tending to throw light on the transaction and to reveal its nature. In Hanie v. State, 151 Texas Cr. Rep. 395, 208 S.W. 2d 373, 375, where the

appellant complained of the admission of testimony as to the condition of the houseboat where the homicide took place, we said:

"* * * It is contended that this evidence about "blood and brains" is inflammatory and prejudicial. Probably so. Most evidence describing a murder is inflammatory and prejudicial, but as a general rule is admissible to show the circumstances of the killing, and frequently serves a useful purpose in enabling the jury to fix appropriate penalty. We find nothing in this testimony preventing its admission under the rules."

After the state's witness Knowles had testified that he was familiar with shotguns and shotgun shells he was asked to examine the shotgun shells introduced in evidence and then asked: "Is that such a shell you would use to go bird hunting or squirrel hunting?" and the witness answered: "Not hardly." To which appellant stated: "Object to the testimony about bird hunting or squirrel hunting," which was overruled. The matter was not thereafter referred to. Immediately prior to the objection the witness had testified that the shells in evidence contained magnum No. 4 shot, and were a quarter of an inch longer than the standard shell, and "has more power than the normal shell, which gives it a higher velocity and more penetrating and hitting power."

We perceive no injury to the appellant by reason of such testimony and especially in view of his confession introduced in evidence that he got the gun and shells with the intention of killing the deceased.

Appellant objected to the testimony of John S. Fox concerning a window screen because the witness had testified he examined the one on the south side whereas other testimony shows that the screen came from the west side.

The screen had been previously introduced in evidence and the witness had identified it. He testified that when he went on the outside of the house to this back window he could see the body of the deceased on the bed and by stooping a little the hole in the screen was in line with the deceased's head. When the testimony is considered as a whole in regard to the window and the screen, no error is revealed.

Appellant insists that the court erred in requiring his

brother, Woodrow Hall, to testify over his objection that he owned the shotgun that had been introduced in evidence.

Appellant, while testifying, stated that he got the gun out of his brother's house, and his written statement introduced in evidence recites that he "got my brother's single barrel .12 gauge shotgun and a full box of shells." We perceive no error.

Finding no reversible error, the judgment is affirmed.

Opinion approved by the Court.

ON APPELLANT'S MOTION FOR REHEARING

DICE, Judge.

Appellant insists that because of the testimony in the record that he had the "mind of a sixteen-year-old boy" the evidence is insufficient to sustain the verdict fixing his punishment at death and the verdict is contrary to both the law and the evidence.

While Art. 31, Vernon's Ann. P.C., provides that "a person for an offense committed before he arrived at the age of seventeen years shall in no case be punished with death," such statute is not applicable to the present case as the evidence shows that appellant was twenty-eight years of age at the time of the trial and over the age of seventeen years on the date the offense was committed. Under the provisions of the statute it is the age of the accused that controls as to whether he may be punished with death rather than the degree of his mentality.

We have again examined the record in the light of the other contentions presented by appellant in his motion for rehearing and remain convinced that we properly disposed of the cause on original submission.

The motion is overruled.

Opinion approved by the Court.