**Jimmie Ray GUILLORY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 38769.**

Court of Criminal Appeals of Texas.

Feb. 2, 1966.

Rehearing Denied March 30, 1966.

James M. Crane (Court Appointed), Conroe, Hopkins & Alworth (Court Appointed), Conroe, for appellant.

Ellis A. Oualline, Jr., Dist. Atty., William J. Benardino, County Atty., Conroe, and Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

Appellant was convicted, upon a plea of guilty, of murder and his punishment was assessed by the jury at death.

At the trial, evidence was presented by the state which showed that the deceased operated a Fina service station on Highway 105 near Beach, in Montgomery County. On the day in question, the deceased left his home around 6 a. m. to go to the station. Around 6:30 a.m. his wife and stepson went to the station and discovered that he was not there. A cash register was empty and certain credit tickets and slips were missing. Thereupon, the stepson called the sheriff's department. While the wife and stepson were at the station, appellant came in, patted Mrs. Hughes, the deceased's wife, on the shoulder and asked where the deceased was.

Around 7:30 a. m., deputy sheriff W. D. Winford arrived upon the scene and soon determined that there had been a robbery at the station. Later, at 8:30 a. m., the deputy talked to appellant at another service station and, as a result of the conversation, appellant led the officer to where the deceased was found lying on the ground in some thick underbrush off the Honea Road some eight miles west of Conroe. At such time, the deceased was lying face down, with his head and shoulders in a puddle of blood, still alive but struggling for breath. A coat hanger was underneath the body and some friction tape, which had been cut, was on each cuff of his shirt. The deceased was moved from the scene and later died as the result of injuries to the head and skull.

Dr. Joseph Jachimczyk, chief medical examiner of Harris County, who performed an autopsy upon the deceased, testified that he found extensive damage to the skull and brain; that there had been at

least three and probably five blows to the scalp and that the cause of death was a fractured skull.

After the deceased's body was found and Officer Winford had taken appellant to the courthouse, appellant accompanied the officer to a Billups service station, where he opened the door to his automobile and pointed to a jack handle wheel nut wrench which he stated he used to rob the deceased and strike him in the head. A long-blade pocket knife was taken from appellant's person and also the sum of $124 in money. From the service station appellant then accompanied the deputy sheriff to a location 7¾ miles from Conroe on Highway 105, where he pointed out a group of checks and courtesy cards which he had taken in the robbery of the deceased.

In the conversation with Officer Winford which led to the finding of the deceased's body, the weapon used by appellant in the killing, and the tickets and papers taken in the robbery, appellant related that he went to the deceased's service station around 6 a. m. on the day in question and forced the deceased to put the money and tickets in a sack; that he then put the coat hanger around the deceased's neck and forced him, at the point of a knife, to drive his automobile out on the Honea Road, where he was directed to stop. Appellant stated that he then forced the deceased to get out of the car, go under a fence, and when they had gone some seventy-five feet he taped the deceased's hands behind him. Appellant related that after he had struck the deceased several times in the head with the lug wrench he cut the tape from his hands.

A written confession made by appellant to Officer Winford, after being duly warned, was introduced in evidence by the state without objection, in which appellant admitted having gone to the service station on the day in question and robbing the deceased, then forcing him to drive the automobile out on the Honea Road, stop, and, after forcing the deceased to cross the fence into the woods, hitting him three times on the head with the tire tool.

Testifying as a witness in his own behalf, appellant admitted robbing the deceased and then striking him on the head with the tire tool but denied that he had any intent to kill.

The question of appellant's sanity was also raised in his testimony when he testified and offered proof that he had been admitted to a mental hospital in the State of Louisiana, in the year 1959, for examination but was discharged after three months. He also testified that when he was fourteen years of age he was struck with a baseball bat and since that time had suffered from headaches and ear trouble. His two sisters, called as witnesses, corroborated his testimony relative to the headaches and ear trouble. He further stated that on the day in question, before the robbery he took some pills and drank some whisky.

Witnesses were called by the state, including Dr. Herschel M. Faulkner, who testified that appellant was sane.

The court, in his charge, to which no objection was made, submitted to the jury the defense of insanity and instructed the jury to acquit appellant if they believed he was insane on the date the deceased was struck and killed.

The jury was further charged with reference to their right to consider evidence of temporary insanity produced by the recent use of intoxicating liquor or narcotics, or a combination thereof, as mitigation of the penalty to be assessed.

Appellant complains of the admission of certain evidence in the case. He first insists that the court erred in permitting Officer Winford to relate to the jury the statements made to him by appellant while under arrest and without having been duly warned.

The record shows that the statements made by appellant to the officer led

to the recovery of the deceased's body, the murder weapon, and some of the fruits of the crime. Such statements were admissible as an oral confession under the provisions of Art. 727, Vernon's Ann.C.C.P. Riley v. State, 168 Tex.Cr.R. 417, 328 S.W. 2d 306; Edmond v. State, 169 Tex.Cr.R. 637, 336 S.W.2d 946.

■ It is also insisted that the state was erroneously permitted to show that appellant had a juvenile record and that he was a homosexual.

The record reflects that the hospital records introduced by appellant reflected that he had been in a reform school. On cross-examination, appellant was asked if he had been sentenced to the state reformatory in Louisiana in 1955 and he answered in the affirmative. While no objection was made by appellant to the question, the trial court instructed the jury not to consider the question and ordered it stricken from the record.

On further cross-examination, appellant was asked if he had not been kept in solitary confinement because he was a homosexual. After he had answered in the negative, the objection: "Your Honor, we are going to object to that," was made, which was sustained by the court and the jury instructed not to consider the question and answer for any purpose. We perceive no reversible error.

■ Further cross-examination of appellant with reference to his having struck the victim of an attempted armed robbery with a piece of iron pipe, for which offense he was convicted, was not error in view of appellant's testimony on direct examination that he had never taken or attempted to take the life of anyone.

Complaint is also made that the court erred in permitting deputy sheriff Winford and the ambulance driver, Gates, to describe the bloody scene where the deceased was found.

■ This testimony was admissible to show the circumstances of the killing, and— as was stated in Hanie v. State, 151 Tex. Cr.R. 395, 208 S.W.2d 373—it frequently serves a useful purpose in enabling the jury to fix an appropriate penalty. See, also, Hall v. State, 164 Tex.Cr.R. 573, 301 S.W. 2d 161. It should be pointed out that we are not here dealing with photographs of the deceased but with testimony of the witnesses describing the scene of the killing.

Numerous complaints are made to the court's refusal to grant a new trial. It is first insisted that a new trial should have been granted because of separation of the jury in the case, in violation of Articles 623 and 668, V.A.C.C.P.

The record reflects that at the beginning of the trial it was made known to the parties that the courthouse was under construction and the jury room had been made useless for habitation by the jury. At such time it was agreed between the state and the appellant that the jury might be cared for at night in a hotel where they could be kept together "in the sense that two or more may be occupying one room and two or more in another room, adjacent rooms in the hotel, under the strict supervision, and care, and instruction of the officers of the court."

■ Pursuant to such agreement, the twelve male jurors were housed in the Conroe Hotel on the night of June 14, 1965, in six separate rooms—two jurors to a room, in charge of an officer who slept in another room. The officer had a key to the rooms, and there is no showing of any outside communication with any juror. Under the record, we perceive no reversible error. Dukes v. State, 162 Tex.Cr.R. 71, 282 S.W. 2d 235.

■ In his motion for new trial, appellant alleged as jury misconduct that the jury foreman, Warren Sherrod, had made a telephone call to his wife after being chosen as one of the jurors in the case. At the hearing on the motion, the juror

Sherrod testified that he did call his wife for some clothes but did not discuss the case. Two other jurors testified that they made telephone calls either to their homes or to someone to relay a message to their relatives but that the case was not discussed. The recipient of each telephone call was placed on the stand and testified that the case on trial was not discussed. Under the record, no reversible error is presented, Bryan v. State, 63 Tex.Cr.R. 200, 139 S.W. 981; Early v. State, 51 Tex.Cr. R. 382, 103 S.W. 868.

Appellant also alleged as a ground for new trial that the sheriff of Montgomery County stated in the presence of juror Sherrod, after he had been sworn in the case, that appellant was a bad man. At the hearing of the motion, the juror Sherrod testified that after two or three jurors had been selected and they were in the judge's chambers, the sheriff stated that appellant was "a bad fellow," or something to that effect.

■ None of the other eleven jurors who testified upon the hearing stated that they heard such statement. Sheriff Reaves testified that at no time did he make the statement that appellant was a bad man. Under the record, the court did not abuse his discretion in refusing to grant a new trial.

Appellant's remaining claim of error is that the jury was guilty of misconduct when, during its deliberations and before reaching a verdict, a discussion was had to the effect that if appellant was given a life sentence or ninety-nine years he would probably be released in about fifteen years.

■ While there was testimony that one or more of the jurors stated that if appellant received a life sentence he could possibly get out in about fifteen years, such statement—not being a misstatement of the law—would not call for a reversal of the conviction.

Article 781d, Section 15, V.A.C.C.P., authorizes the Board of Pardons to release with the approval of the Governor any person confined who has served one-third of the maximum sentence imposed, and provides that anyone may be paroled after serving fifteen years. Torres v. State, 169 Tex.Cr.R. 113, 331 S.W.2d 929; Salcido v. State, 167 Tex.Cr.R. 173, 319 S.W.2d 329; Napier v. State, 166 Tex.Cr.R. 361, 314 S.W.2d 102; Roberson v. State, 160 Tex. Cr.R. 381, 271 S.W.2d 663.

The judgment is affirmed.

Opinion approved by the Court.

## ON APPELLANT'S MOTION FOR REHEARING

BELCHER, Commissioner.

It is again insisted that the misconduct of the jury warrants a reversal because of the jury's discussion during its deliberations before reaching a verdict that the appellant would probably be released in about fifteen years if given a life sentence.

A re-examination of the testimony on the hearing of the motion for new trial reveals that the appellant called two jurors. The first juror testified that in discussing the punishment before arriving at a verdict, one or more of the jurors said the appellant *could probably* get out in about fifteen years if assessed a life sentence, but he could not recall the name of the juror or jurors who made the statement. No inquiry was made of the other juror pertaining to the time the appellant would serve before his release.

The state called the other ten jurors and none of them were asked or testified pertaining to any discussion during their deliberations concerning the punishment to be assessed or the time served on a life sentence before release. The refusal of a new trial because of jury misconduct was not error.

For the first time on motion for rehearing, the appellant contends that the trial court committed fundamental error in failing to withdraw his plea of guilty and enter a plea of not guilty for him, before submitting the charge to the jury, since evidence

was introduced bearing upon his sanity at the time of the offense and the court charged the jury on the defense of insanity. It is contended that such action deprived the appellant of his defense of insanity and due process.

In submitting the case to the jury, the court charged in the first paragraph that the appellant had pleaded guilty to the offense of murder; however, there was no instruction to find appellant guilty upon such plea.

The court further charged upon the law applicable to both murder with and without malice, and then submitted the issues of each to the jury, authorizing a conviction only after they had found beyond a reasonable doubt that he was guilty, and applied the law of reasonable doubt thereto.

Insofar as our original opinion may be construed as holding that there was evidence introduced before the jury which would support a finding that appellant was insane, at the time of the killing, or at the time of the trial, such opinion is now amended and corrected.

While there was testimony as to appellant's mental condition, all of the evidence was that he was legally sane.

The issue of appellant's sanity was raised, not by his testimony, but by his plea of guilty.

The judgment recites "it plainly appeared to the Court that said defendant was sane"; that the plea of guilty was received and entered of record as the plea of the defendant and that it was read to the jury.

■ There being no evidence that the defendant was insane, there was no occasion for the court to withdraw his plea of guilty, and an instruction to the jury to find him guilty would have been proper.

The trial court chose, however, to submit the question of appellant's sanity as well as the question of malice and temporary insanity produced by the use of intoxicating liquor or narcotics, or a combination

thereof, which related only to the punishment to be assessed by the jury.

The charge was more favorable to appellant than was required.

There were no objections to the court's charge and no requested charges.

The appellant relies upon Thompson v. State, 127 Tex.Cr.R. 494, 77 S.W.2d 538, for a reversal.

In that case the court instructed the jury that the defendant was sane and to find him guilty as charged in the indictment, but in a requested charge instructed the jury to find him not guilty if he was insane. It is evident that there was a direct conflict between the main charge and the requested charge.

The failure of the court to withdraw the plea of guilty and enter a plea of not guilty, under the facts and the charge as given does not present reversible error. Art. 666 Vernon's Ann.C.C.P.

The motion is overruled.

Opinion approved by the Court.