ALBERT HAMILTON v. THE STATE.

No. 4578.    Decided February 27, 1918.

**1.—Murder—Change of Venue—Practice on Appeal.**

This court has no authority to review the action of the trial judge in refusing a change of venue, where the evidence heard on the application for such change of venue was not verified and filed during the term at which the case was tried. Following Bowden v. State, 12 Texas Crim. App., 246, and other cases.

**2.—Same—Evidence—Clothes of Deceased—Harmless Error.**

Where, upon trial of murder, the evidence showed that the brother of defendant had been forbidden to enter the house of deceased, but he did so anyhow and struck at deceased's feet with a pocket knife while the latter was holding a lantern in his hand, and it was a controverted issue as to whether deceased struck at his assailant with a lantern or otherwise; defendant claiming that he defended his brother in killing the deceased, and the State introduced in evidence the shoes worn by deceased at the time he was killed, but the record did not make it clear as to the condition of said shoes, that is, whether they had cut-marks or not, the error, if any, was harmless.

**3.—Same—Argument of Counsel—Requested Charge—Bill of Exceptions.**

In the absence of a requested charge, the remark of State's counsel that the defendant drove his knife into the heart of deceased without provocation; the evidence showing that the deceased was stabbed in the breast, and that he died in a very few minutes after the wound was inflicted, there was no reversible error. Besides, the bill of exceptions was defective in not showing that the objection was verified. Following Smith v. State, 4 Texas Crim. App., 626, and other cases.

**4.—Same—Jury and Jury Law—Misconduct of Jury—Acts of Third Parties.**

Where, upon an appeal from a conviction of murder, the record showed that an old man inadvertently got among the jurors, and upon learning that he was out of place excused himself and left, the conclusion of the trial judge that there was no injurious conversation by members of the jury with an outsider was sustained. Following Fox v. State, 53 Texas Crim. Rep., 284.

**5.—Same—Jury and Jury Law—Misconduct of Jury.**

Where it appeared from the record on appeal that the sheriff took the jury, while it was forming, to a meal at a place where there were a number of other people dining, to a separate table, and that there was no mingling or communication with them, that the sheriff was present with them, and that there was an absence of injury shown, there was no reversible error. Following Parshall v. State, 62 Texas Crim. Rep., 177, and other cases.

**6.—Same—Transcript—Practice on Appeal—Invited Argument.**

Although the transcript was not filed in time, following Black v. State, 41 Texas Crim. Rep., 185, the court has nevertheless examined the same and finds that the bill of exceptions complaining of the argument of State's counsel as qualified by the trial judge showed that the argument was invited, there was no reversible error. Following Smith v. State, 21 Texas Crim. App., 277, and other cases.

**7.—Same—Evidence—Bill of Exceptions.**

As presented in the bill of exceptions, the fact that the State's attorney asked a witness if he did not wink at the defendant while testifying at the examining trial, does not show reversible error.

**8.—Same—Evidence—Pocketknife—Deadly Weapon.**

Where, upon trial of murder, it made it incumbent upon the State to introduce in evidence the pocketknife with which the stab was made, and that the use of it showed that the defendant intended to slay the deceased, was a deadly weapon although it was not such per se, there was no reversible error.

**9.—Same—Evidence—Threat not too Remote.**

Upon trial of murder there was no error in permitting a witness to testify that about two years before the homicide, the deceased and defendant were at a dance, and that a quarrel occurred between them and that defendant said if he ever lived to get grown he would kill the deceased, and this was objected to on the ground alone that it was too remote.

**10.—Same—Threats—Rule Stated—Remoteness Does not Exclude.**

The relevancy of threats as evidence against the accused is not affected by the fact that they were near or remote to the homicide in question, as this is a circumstance to be considered by the jury as to whether there was connection between the threat and the homicide. Following Leech v. State, 63 Texas Crim. Rep., 339.

**11.—Same—Threats—Evidence—Reconciliation—Lapse of Time.**

In view of the fact that the authorities are practically in accord upon the proposition that threats are not to be excluded because of a lapse of time alone, and the fact that reconciliation is not made clear in the records, and the fact that the objection made in the instant case is confined to the remoteness of the threats, this court is constrained to overrule the objection thereto, and there was no reversible error. Following Powdrill v. State, 69 Texas Crim. Rep., 340, and other cases.

**12.—Same—Murder—Charge of Court.**

While much of the evidence in the instant case tends to show manslaughter, there is evidence also that the homicide was unprovoked, and that the same supported the theory of murder. There was no reversible error, therefore, in submitting the law of murder to the jury.

Appeal from the District Court of Newton.   Tried below before the Hon. W. T. Davis, Special Judge.

Appeal from a conviction of murder; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*Martin & McDonald, Forse & Ferguson,* and *A. L. Shaw,* for appellant.—On question of change of venue: Randle v. State, 28 S. W. Rep., 953; Meyers v. State, 46 id., 817; Steagald v. State, 22 Texas Crim. App., 464; Streight v. State, 62 Texas Crim. Rep., 453, 138 S. W. Rep., 742; Simonds v. State, 76 Texas Crim. Rep., 487, 175 S. W. Rep., 1064.

On question of introducing shoes of deceased in evidence: Cole v. State, 45 Texas Crim. Rep., 225; Christian v. State, 79 S. W. Rep., 562; Melton v. State, 83 id., 822.

On question of misconduct of jury: Defriend v. State, 22 Texas Crim. App., 570; Wright v. State, 17 id., 152.

On question of admitting in evidence a bloody knife: Crenshaw v. State, 48 Texas Crim. Rep., 77; Puryear v. State, 98 S. W. Rep., 258; and cases cited supra.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of filing record: Maxwell v. State, 69 Texas Crim. Rep., 248, 153 S. W. Rep., 324; Henderson v. State, 76 Texas Crim. Rep., 66, 172 S. W. Rep., 793.

On question of change of venue: Pierson v. State, 21 Texas Crim. App., 14; Lemons v. State, 59 Texas Crim. Rep., 299; Ferguson v. State, 61 id., 152; Mooney v. State, 76 Texas Crim. Rep., 539, 176 S. W. Rep., 52.

MORROW, Judge.—Appellant was convicted of the murder of Ben Holmes. The homicide took place at a dance at the residence of Joe Roff. Appellant and his two sisters and his brother were at the dance, and in an altercation in which the deceased and appellant and appellant's brother took part ·deceased was stabbed with a pocketknife one time, of which he expired. The theory of appellant was that deceased was at fault in the quarrel, and that he made an assault on the brother of appellant, striking him with a lantern, and that appellant struck in defense of his brother.

The issues of manslaughter and defense of another were properly submitted to the jury.

An application for change of venue was made and overruled. Evidence was heard controverting its truth but the evidence is not brought before this court in a manner that it can be considered. Article 634, Code of Criminal Procedure, is as follows: "The order of the judge granting or refusing a change of venue shall not be revised upon appeal, unless the facts upon which the same are based are presented in a bill of exceptions prepared, signed, approved and filed at the term of the

court at which such order was made." This article has frequently been held to deny this court authority to review action of the trial judge in refusing change of venue where the evidence heard on the application was not verified and filed during the term at which the case was tried. Where this has not been done we are not privileged to consider it. Bowden v. State, 12 Texas Crim. App., 246, and numerous other cases listed in Vernon's C. C. P., p. 342, and Branch's Ann. P. C., p. 181, sec. 301.

There was evidence that at the time of the homicide, which was about 12 o'clock at night, the deceased was standing on the porch or gallery of the house, holding a lantern in his hand; that he had forbidden Henry Hamilton, the brother of appellant, coming into the house, and that Henry Hamilton was striking at the deceased's feet with a pocket-knife. This was a controverted issue, as was also whether deceased either struck Henry Hamilton or struck at him with a lantern. The State introduced in evidence the shoes worn by deceased at the time he was killed. The record does not make it clear as to the condition of the shoes. It appears that when they were first offered in evidence the court declined to admit them, but subsequently did so. At the time they were offered it was shown that no one had made any cut marks on them since the homicide; that nothing had been done to them except they had been washed. Whether they had or had not cut marks on them is not disclosed. In this state of the record we are unable to say that there is error shown. If they had cut marks on them it would not have been error to admit them, as they would have tended to corroborate the State's testimony that Henry Hamilton was striking at deceased's feet with a knife he had in his hand, which was also controverted. If they had no cut marks on them their introduction could not have been harmful, as they would have tended to contradict the theory of the State. Be this as it may, the matter as presented shows no harmful error.

The remark of the county attorney that the defendant drove his knife into the heart of Ben Holmes without provocation was not, as shown by the bill, such an argument as would justify a reversal of the cause. The ground of objection was that there was no evidence that deceased was stabbed in the heart. It does not set out the evidence upon the subject and the fact that there was no stab in the heart is not verified by the bill. It has often been declared that a mere statement of the ground of objection is not a verification of the fact. It simply shows an objection was made. It should show that the objection was founded in fact. Smith v. State, 4 Texas Crim. App., 626, and other cases listed in Branch's Ann. P. C., p. 134, sec. 209. There was evidence that deceased was stabbed in the breast and that he died in a very few minutes after the wound was received. There is also evidence that there was an absence of provocation by the deceased. This, of course, was a controverted issue. In view of this condition of the record it

can not be said that the remark of the county attorney, even if it did not accurately state the evidence, was so prejudicial that it could not have been cured by special charge, and none having been requested the complaint can not be sustained. Kennedy v. State, 19 Texas Crim. App., 618; Felder v. State, 5 Texas Crim. App., 145, and other cases cited in Branch's Ann. P. C., p. 204, sec. 362.

The conclusion of the trial judge on hearing the evidence that there was no injurious conversation by members of the jury with an outsider is sustained by the evidence introduced thereon. Fox v. State, 53 Texas Crim. Rep., 284. The matter complained of is that an outsider entered the jury box and had a whispered conversation. The facts show that on old man inadvertently got among the jurors and upon learning he was out of place excused himself and left.

Another complaint is that while the jury was forming the sheriff took them to a meal where there were a number of other people dining. It appears affirmatively that he took them to a separate table and that there was no mingling or communication with them and that he was present with them. We think that the record discloses that the State discharged the burden which rested upon it to show an absence of injury. Parshall v. State, 62 Texas Crim. Rep., 177, and other cases cited in Vernon's C. C. P., p. 791.

We have examined this record, though it was not filed within the time to require it. Black v. State, 41 Texas Crim. Rep., 185.

The bill complaining of an argument with reference to the testimony of Leonard Roff as qualified by the court showing that the argument was invited, presents no error. Smith v. State, 21 Texas Crim. App., 277, and other cases listed in Branch's Ann. P. C., p. 205, sec. 363. As presented in the bill, the fact that the State's attorney asked Leonard Roff if he did not wink at appellant while testifying at the examining trial does not show reversible error. It appears from the statement of facts, which is referred to, that the witness said he did not remember doing so. If the answer had been in the affirmative it is not clear that it would not have been admissible as tending to show bias.

The homicide was occasioned by a stab with a pocketknife, which was introduced in evidence. The complaint of the introduction of the knife in evidence can not be sustained. The statute, article 1147, Penal Code, makes it incumbent upon the State, where the instrument producing homicide is not per se a deadly weapon, to prove by evidence that in using it the accused intended to slay the deceased. The decisions excluding the clothing worn by the deceased under certain circumstances are based upon the proposition that such evidence is admissible only when it tends to prove a controverted fact. The knife in question not being a deadly weapon per se, the burden was upon the State to prove that in its use appellant intended to kill deceased. Its introduction upon that issue was not unauthorized. Vernon's P. C., p. 717; Branch's

Ann. P. C., p. 1031, sec. 1855; Wharton's Crim. Evidence, vol. 1, sec. 311.

A witness testified that about two years before the homicide the deceased and appellant were at a dance; that the boys were all drinking, and that Ben Holmes, deceased, and Albert Hamilton, the appellant, got into a dispute, the cause of which the witness did not remember, and appellant said, "if I ever live to get grown I will kill him." This was objected to on the ground that it was too remote. If the question were an open one, the writer would be disposed to agree with this contention. It seems to be foreclosed against appellant. Mr. Wharton, in his work on Criminal Evidence, volume 2, page 1706, section 911, lays down the following rule on the subject: "The relevancy of threats as evidence against the accused is not affected by the fact that they were near or remote to the homicide in question, as the length of time intervening is a circumstance to be considered by the jury in determining whether or not there was a connection between the threat and the homicidal act. The length of time intervening does not affect the relevancy of the testimony; but its nearness or remoteness to the act is a circumstance affecting its weight and credibility." Supporting it are cited a. number of cases, including decisions by this court. Leech v. State, 63 Texas Crim. Rep., 339. It is suggested by the record, though not made clear, either in the bill of exceptions or statement of facts, that the transaction in which the threats took place did not interrupt the friendly relations between the appellant and the deceased, but that they continued on friendly terms up to the time immediately preceding the homicide, and that the occasion of the homicide was a quarrel occurring out of incidents attending the dance and the conduct of deceased and appellant while there. If it were made clear that there was complete reconciliation the writer would hesitate to hold the evidence of the threat detailed admissible. As to whether remote threats, followed by complete reconciliation, are admissible there seems to be a conflict of opinion. This court, in Brown v. State, 56 Texas Crim. Rep., 389, indicates that under such circumstances the threat should be rejected, citing McLain's Crim. Law, sec. 419, where the text supports this doctrine, citing Hyndman's case, 99 Cal., 1, where the evidence of threats and reconciliation was admitted, the jury being authorized to disregard the threats if the reconciliation was in good faith. In State v. Barnwell, 80 N. C., 466, the subject was discussed and the conclusion of the court reached in the following language in the syllabus: "Where, on a trial for murder, express malice is shown to have once existed, but a subsequent reconciliation, followed by fresh provocation, is proved, the law will refer the motive of the slayer to the recent provocation, and not to the antecedent malice, unless the special circumstances of the case forbid such a presumption." To the same effect is Cannon v. State, 57 Miss., 247, 64 Am. Dec., 582.

This court, in Powdrill v. State, 69 Texas Crim. Rep., 340, 155 S. W.

Rep., 236, received evidence of remote threats followed by evidence of a partial reconciliation, holding that the facts were for the jury to enable them to determine the weight of the evidence. In view of the fact that the authorities are practically in accord upon the proposition that threats are not to be excluded because of lapse of time alone and the fact that reconciliation is not made clear and the fact that the objection made in the instant case is confined to the remoteness of the threats, we are constrained to overrule the assignment.

The appellant suggests that murder should not have been submitted to the jury. It is not to be questioned that much of the evidence tends to show manslaughter. There is evidence, however, that the homicide was unprovoked. The evidence showed, without dispute, that shortly before the trouble arose appellant had missed his hat and that the deceased got it and gave it to him. There is also some evidence that appellant cursed in the house and that deceased remonstrated with him on account of the presence of his wife and other ladies. Mrs. Ben Holmes, widow of deceased, said that just before the difficulty appellant came in the house cursing and that deceased told him not to curse before his wife. That appellant said he wanted his hat, and deceased got it and said, "Albert, don't swear in the house, come on out here and let's you and I talk about this thing," and walked out on the porch and said, "Now, Albert, I am a friend to you boys; you come on and dance, and I will take care of you." Appellant said that he was going home, and deceased said, "Wait and let me hold the lantern for you," and he got the lantern and was standing on the steps holding the lantern and Henry Hamilton came up and cut at his feet and he hit at Henry Hamilton and knocked the licks off, and Albert Hamilton came up and stabbed him. There wasn't a word said before he stabbed him. Albert ran up the step, had one foot on the bottom step, and had his knife in his right hand and grabbed hold of the post with his left hand and stabbed him. Deceased was standing there leaned over. He didn't have anything in his hand but a lantern. He had the lantern in his left hand. He was holding the lantern for the girls to go down. The daughter of deceased gave substantially the same testimony as her mother. There was some other testimony that appellant and his brother were mad and cursing out in the yard. There is much testimony to the effect that deceased hit Henry Hamilton a blow on the face or head with the lantern, causing a somewhat serious injury; that he also struck at appellant or threw the lantern at him.

The evidence being conflicting as to the incidents of the tragedy and there being evidence supporting the theory of murder, we are not authorized to determine its truth.

The judgment is affirmed.

*Affirmed.*

PRENDERGAST, JUDGE, absent.