## GEORGE GOODE V. THE STATE.

No. 14658.   Delivered January 20, 1932
Rehearing Granted March 29, 1933.
Reported in 58 S. W. (2d) 1015.

LATTIMORE, Judge, dissenting in part.

The opinion states the case.

*Joe S. Gambill* and *Sullivan, Speer & Minor,* all of Denton, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for burglary; punishment, two years in the penitentiary.

A storage warehouse was burglarized on the night of August 26, 1929, and a new four-door, three-window Ford sedan car was taken therefrom. The house was entered by sawing the lock. The next morning the sawed lock was found in the grass near the door. The car was taken on Monday night. It was found in Breckenridge, Texas, some two hundred miles west of Fort Worth, according to the state witnesses, on the Wednesday following. The state introduced one Serren who testified that he and appellant burglarized the house in question; that, after they went to the house, appellant went out and came back presently with a hack saw which was used by them in sawing off the lock. He detailed how they pushed the car out of the place, got in it, and went toward Fort Worth. He said he went to sleep in the car, woke up the next morning west of Fort Worth on the road to Breckenridge, got out of the car, and left it in charge of appellant, and came on back to Denton. The state introduced witnesses who saw appellant sitting in a car in Breckenridge, Texas, answering in every way the description of the alleged stolen car, and that this was a day or two before the sheriff from Denton county came to Breckenridge. These witnesses said appellant's brother-in-law was near by at the time they saw appellant in said car. Mr. Cultra, a car storage man doing business in Breckenridge, was introduced, and testified that appellant and another man came to his place in the alleged stolen car and stored it. He said the other man was driving the car. He delivered this car to the sheriff of Denton county who came out in a day or two and got it. The fenders of the car were described as being slightly bent and scarred. The car found by the sheriff in possession of Mr. Cultra was identified by the owner as the one taken from the burglarized house. The evidence appears ample to support the conviction. Appellant's counsel has filed an exhaustive brief presenting the various questions raised.

We find only one bill of exception in the record. Its complaint is that the court erred in the hearing of the motion for new trial, in that he permitted a juror to testify orally to certain facts which evidently appellant thought should be established otherwise. One of the allegations in the motion for new trial was that juror Kyle had made false statements in his examination upon his voir dire. It appears from the record that general questions were asked the jurors as to whether they were or had been peace officers or deputy sheriffs, and that juror Kyle, in common with the others, answered said question in the negative. It was alleged in the motion for new trial

that this statement was untrue and misleading. There were also allegations of misconduct on the part of the jury, and the court heard evidence in connection with the motion for new trial. Mr. Kyle was permitted to testify that he was not a deputy sheriff, and had never been a deputy sheriff, and had never been sworn in as deputy sheriff, and had never been elected to any office. We perceive no error in the action of the court in allowing the witness to answer these questions. In presenting this contention in his brief appellant cites Meador v. State, 94 Texas Crim. Rep., 608, and Bolt v. State, 112 Texas Crim. Rep., 267, and authorities collated on pages 247 and 313 of 16 R. C. L. We are in harmony with the general principle that false material misstatements by a prospective juror made when questioned upon his voir dire might call for the granting of a new trial, but are of opinion that nothing appears in the instant case supporting the proposition that Mr. Kyle made any false statement. In addition to what appears in the bill of exception, we observe that the sheriff of the county testified on said hearing that Kyle had never been a deputy sheriff. He said that Kyle had accompanied him upon one liquor raid, but, as far as he knew, this was the only aid he had ever furnished to the sheriff's office.

We have carefully examined the statement of facts heard by the court upon the hearing of the motion for new trial, in view of appellant's complaint in said motion of a separation of the jury, and that members of the jury talked with outside persons after their impanelment, but are not in accord with either contention. It was shown that two rooms in the court house at Denton were equipped with locks, one on the second floor where the jury deliberated in the daytime, and one on the third floor where they slept when held overnight. It appears that the trial began one morning and was not concluded until the afternoon of the day following. That night one of the jurors complained of illness, and was taken from the second floor where the other eleven jurors were left, to the third floor by an officer and there locked in the sleeping room usually occupied by the jurors. Something like an hour afterward the other jurors were conducted to the same sleeping room. They were not out of the building at any time. The record affirmatively shows that no one approached or conversed with the ill juror or the others during the interim. Similar facts in principle were held not to constitute a separation of the jury such as would call for reversal in Wood v. State, 84 Texas Crim. Rep., 187. See, also, Jones v. State, 69 Texas Crim. Rep., 447;

Watson v. State, 82 Texas Crim. Rep., 305; Chant v. State, 73 Texas Crim. Rep., 345; Cade v. State, 96 Texas Crim. Rep., 523; Tucker v. State, 115 Texas Crim. Rep., 41.

The record entirely fails to show any communication between the members of the jury and outside persons further than that a man came up to them on the street or in a restaurant and said, "Good morning," and made some remark about the weather. When some one of the jurors said to him that they were a jury, he apologized and went away without further speech. We do not think this any violation of the law forbidding communications between the jury and persons not members thereof. Hamilton v. State, 83 Texas Crim. Rep., 90; Patterson v. State, 106 Texas Crim. Rep., 553; Newton v. State, 114 Texas Crim. Rep., 537.

Complaint is made, based on an exception thereto, of paragraph six of the court's charge, which is as follows: "You are instructed that the witness Raymond Serren is an accomplice. You cannot convict the defendant upon the testimony of the said witness Raymond Serren unless you believe that his testimony is true and that it shows that the defendant is guilty of the offense charged against him; nor unless you further believe that there is other evidence in the case, aside from, and independent of, the testimony of the said Raymond Serren, corroborative of his testimony, and tending to connect the defendant with the commission of the offense charged."

We do not think this objectionable as conveying to the jury the court's opinion that appellant participated in the crime, nor that it imposes a less burden upon the state in respect to the corroboration of the accomplice than the law contemplates, but, if any doubt could arise in this regard, it would be removed by the fact that two special charges asked were given, in one of which the jury were informed that it was not intended in paragraph six of the charge to convey the idea to the jury that, because Serren took part in an offense, that defendant was also a party thereto. The other charge supplemented the main charge on the question of corroboration.

Appellant also urges that there is not sufficient evidence to corroborate Serren. We have carefully examined the statement of facts. Without attempting to set out in detail all the corroborating facts, it was in testimony that appellant, Serren, and another party were seen together in Denton on Monday night of the burglary; that the lock of the burglarized building was sawed; that some time thát night between 8:30 and 10 o'clock appellant went to Mr. Stowe and borrowed from him

a hack saw; that either the day following the burglary; or the next day, appellant was seen in Breckenridge sitting in a car which answered every description of the alleged stolen car, his brother-in-law being near; that on one of these days appellant and another party, not answering the description of appellant's brother-in-law, took the alleged stolen car to Cultra's storage house and left it there, the other man driving the car; that the alleged stolen car was recovered by the sheriff of Denton county from the possession of Mr. Cultra Wednesday evening after the burglary on Monday night. Appellant did not testify, nor introduce any evidence seriously questioning any of the above matters. We think the evidence amply sufficient to corroborate the accomplice.

No error appearing, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In the ninth paragraph of appellant's amended motion for new trial appellant avers that:

"T. F. Farmer and Geo. Harris were guilty of misconduct as jurors during the trial of said cause, in that after they were duly impaneled as jurors and before they rendered a verdict herein, on the North side of the Court Square and at a time when the other ten jurors and the officer in whose custody they were, were not present nor within hearing of such conversation, talked to a person whose name to defendant is unknown, and about which conversation defendant has not been apprised, nor is he in a position to ascertain the subject discussed between said parties."

Upon the hearing of the motion in support of the foregoing averment appellant offered the testimony of E. Kyle, who was a member of the jury. His testimony is as follows:

"While we were out in front of the cafe there he (referring to Fred Everett, another member of the jury) called my attention to someone talking to some of the jurors. He said, 'Just look there, someone is talking to one of the jurors.' He just called my attention to it, I do not know who he was, he was an old-like gentleman talking to Mr. Farmer. That was next to the restaurant there, and we were out in the street. He talked to Mr. Farmer and then went across on the other side and talked to Mr. Harris. I could not hear what was said and would not have paid any attention to it unless Mr. Everett had called my attention to it. * * * I said that over on the north side at the American Cafe there was someone speaking to one or two of the jurors, but I don't know who it was. * * * When the

talk was had over there in front of the restaurant, whatever was said by whoever it was that said it, I did not understand what was said. I was out in the street at the time and that happened back on the sidewalk."

The state introduced Mr. Farmer, who testified that he had not discussed the case with any person over about the American Cafe during the time the case was on trial, but said that one morning after they had come down the stairway Judge Fulton came along and said, "Good morning," and made some remark about the weather; that he, the juror, moved on and made no answer. Farmer said he did not think any of the jurors were out in the street at the time; that he knew Mr. Kyle and Mr. Everett; but did not know where they were when this incident occurred. He said he thought Mr. Harris, another one of the jurors, was just behind him as they were coming down the stairway. The juror further said that Mr. Fulton, to whom he referred, was an elderly man. The state also called Mr. Harris. He testified that in front of the American Cafe Mr. Fulton started to ask him a question while he was standing on the sidewalk, but that Mr. Smith stopped him. He further testified: "I do not know what he started to ask me. The reason I know that he started to ask me a question is because he walked up there and looked like he was going to. I do not remember whether he said 'Good morning,' and asked me something about the weather or not. I don't think Mr. Fulton spoke to Mr. Farmer. * * * When Mr. Smith told him we were on the jury he begged our pardon and we started on to the court house."

The Mr. Smith referred to in the testimony of the juror was the deputy sheriff in charge of the jury. If Mr. Kyle was mistaken in swearing that the outsider talked to Mr. Harris, Mr. Smith could have been called by the state to support Mr. Harris in his version of the matter. He was not called, and his absence was in no way accounted for. It seems to have been established that Mr. Fulton did have some communication with the juror Farmer. Mr. Fulton was not called to give his version of the matter, and no explanation is made by the state why this was not done. It does appear from the evidence heard upon the motion that an effort was made to get the juror Everett by calling him over the telephone, and that Everett had promised to come as soon as he could get there. He seems not to have arrived in time to get his evidence in the record.

Article 671, C. C. P., reads as follows: "No person shall be permitted to be with a jury while they are deliberating

upon a case, nor be permitted to converse with a juror after he has been impaneled, *except in the presence and by the permission of the court,* or except in a case of misdemeanor where the jury have been by the court permitted to separate. No person shall be permitted to converse with the jury about the case on trial."

Subdivision 7 of article 753, C. C. P., makes it a ground for new trial in a felony case "where a juror has conversed with any person in regard to the case."

When it is shown that the mandates of the statutes have been violated by some outsider conversing with a member of the jury, especially, separate and apart from the other jurors, it has been held that the presumption of injury will arise, and that the burden is upon the state to show that no injury occurred. It has been further held that this burden can not ordinarily be discharged by the testimony alone of the juror conversed with, but that, if the outsider is available to the state, he should be called to aid in discharging the burden. See Early v. State, 51 Texas Crim. Rep., 382; Newman v. State, 91 Texas Crim. Rep., 559, 240 S. W., 312; Toussaint v. State, 92 Texas Crim. Rep., 374, 244 S. W., 514. Many other cases will be found referred to and reviewed in the authorities cited.

We quote from Early's case, as follows: "None of the parties conversed with by jurors were summoned or examined. Heretofore we have held with reference to the separation of jurors that these would be liable if tempered with to suppress the fact, and that therefore little reliance should be placed on their testimony, and the same rule would apply with reference to conversations. So that the necessity for the examination of others than the jurors with whom such conversation may have occurred seems to be necessary. This was not done. We accordingly hold that the burden thus shifted to the State was not discharged by it."

We quote from the opinion in the Toussaint case: "The persons with whom the various jurors talked over the telephone during their retirement have not been produced; nor their absence accounted for. The women with whom the jurors talked in person were not used as witnesses to give their version of the conversation. One of these jurors was not called to show the nature of the conversation in which he took part. Nothing appears in the record to indicate that these women or this juror were not available, nor to indicate that the persons with whom the jurors claimed to have talked over the telephone could not be produced. It having been conclusively

shown that the statutes were violated, the burden was upon the state to meet the presumption of injury by the introduction of such testimony as was available to it. In the absence of so doing, the rule illustrated by the unbroken line of precedents must operate against the verdict. Early v. State, 51 Texas Crim. Rep., 391, and other cases to which we have adverted above. The case of Latham v. State, 75 Texas Crim. Rep., 575, we do not construe as overturning this rule. To so construe it would bring it in conflict with the undoubted weight of authority."

It is appellant's contention that under the facts developed upon the hearing of the motion for new trial our holding in the original opinion in the present case is contrary to that in the Early, Newman, Toussaint, and other cases, supra, and does, in effect, overrule them, if the opinion is permitted to stand. It is further the contention that the three cases cited in the original opinion upon the point in question, when analyzed, are not out of harmony with the general rule heretofore announced by this court as controlling.

In Hamilton v. State, 83 Texas Crim. Rep., 90, 201 S. W., 1009, it appeared that an outsider, an old gentleman, had inadvertently gotten among the jurors in the jury box, and had a whispered conversation, and, upon learning he was out of place, excused himself and left. It does not appear from the opinion in that case what evidence was heard by the court upon the point, but it is stated: "The conclusion of the trial judge on hearing the evidence that there was no injurious conversation by members of the jury with an outsider, is sustained by the evidence introduced thereon."

It might be inferred from what was said in that case that the outsider went into the jury box when all the jurors were present, and that it occurred in open court; or the outsider may have testified upon the hearing of the matter upon the motion for new trial as to what he had said.

In Patterson v. State, 106 Texas Crim. Rep., 553, the point was that a juror had conversed with a party by the name of Goolsby. Upon the motion for new trial Goolsby testified as to the subject of this conversation, and the burden of proof to show that there was no injury was thus discharged.

In Newton v. State, 114 Texas Crim. Rep., 537, it is clear that the facts presented an unusual situation, in which a waiter served the jury with sandwiches, and whatever occurred between the waiter and the jurors happened when they were all present. It was shown by the jurors that, when one of the

jurors asked the waiter what the bill was, he presented it to the juror and the waiter said nothing. The Newton case was regarded as presenting an exception to the general rule, in not relating to an alleged conversation between an outsider and some individual juror, separate and apart from the others. It is made clear that it was not the intention by the opinion in the Newton case, to depart from the holding announced in Toussaint, supra. We quote from Newton's case as follows: "Any intention to depart from the holding of this court in Toussaint v. State, supra, and the authorities there collated, is disclaimed. The article of the statute referred to in those cases is mandatory, and, where the evidence shows a violation of its express command, the presumption of injury obtains. In such case, unless the presumption of injury is overcome by evidence, it is incumbent upon the trial court to grant a new trial. And, ordinarily, where a juror converses with an outsider, it is the rule that the person with whom he talked must be presented to rebut the presumption of injury; the decisions being to the effect that the testimony of the juror alone is not sufficient. Toussaint v. State, supra."

The incident referred to by the juror Kyle may have been as innocent as indicated by the testimony of the juror Farmer; if so, it is unfortunate that the state failed to call the officer who was in charge of the jury, and Mr. Fulton, to give their versions of the conversation. In failing to do so, however, or to account for their absence, the state failed to discharge the burden of proof cast upon it by the incident.

After a careful analysis of the testimony heard upon the motion for new trial, and a further review and analysis of the authorities, we conclude we were in error in our original opinion, as it relates to the subject discussed.

The motion for rehearing is granted, the judgment of affirmance is set aside, and the judgment of the trial court is now reversed and the cause remanded.

*Reversed and remanded.*

MORROW, PRESIDING JUDGE (concurring).—When jurors communicate with a third person without the consent of the court, the burden is upon the state to show that no injury occurred to the accused. See Parshall v. State, 62 Texas Crim. Rep., 177, 138 S. W., 759; Bryan v. State, 63 Texas Crim. Rep., 200. In the interpretation of article 753, subdivision 7, and article 671, C. C. P., the court, in the unanimous opinion written by Judge Henderson in the case of McCampbell v. State,

37 Texas Crim. Rep., 607, announced the rule that, where there was a violation of the statutory command, the burden was upon the state to show an absence of injury. The rule was restated and emphasized in the case of Early v. State, 51 Texas Crim. Rep., 382 (opinion on motion for rehearing, page 390). The rule has been sanctioned in many cases, among them McDougal v. State, 81 Texas Crim. Rep., 179; Wood v. State, 84 Texas Crim. Rep., 187; Gonzales v. State, 88 Texas Crim. Rep., 248; Toussaint v. State, 92 Texas Crim. Rep., 374; Rushnefsky v. State, 92 Texas Crim. Rep., 433; Newman v. State, 91 Texas Crim. Rep., 559; Faulk v. State, 106 Texas Crim. Rep., 505. See, also, 22 Amer. Law Rep., 272, note.

In the present instance, it is made to appear from the evidence that Smith, the deputy sheriff, juror Everett, and Judge Fulton were cognizant of the facts bearing upon the issue involved, namely, the remarks in the presence of a member of the jury. The state failed to call either of these persons, but relied entirely upon the declaration of jurors Farmer and Harris to overcome the presumption of injury. The conclusion that the burden resting upon the state was thus discharged would, in the opinion of the writer, practically abrogate the rule heretofore regarded and often declared essential. In the decisions of this court to which reference has been made above, the statute in question (article 753, subdivision 7, C. C. P.), has been interpreted, and, since its interpretation, has been re-enacted without change, thus giving to the interpretation the force of legislative adoption. See Lewis' Sutherland, Statutory Construction (2nd Ed.), vol. 2, sec. 399; Cooper v. Yoakum, 91 Texas, 391.

The affirmance of this judgment upon the evidence before the court would, in the opinion of the writer, unsettle a principle of law not only of long standing but of undoubted soundness, that is, that, where unauthorized communications with jurors in a case are shown to have taken place, it is incumbent upon the state to make clear to the court that the communications were not of a harmful nature. The burden thus resting upon the state demands diligence which is not met when, as in the present case, the offending persons, that is, the persons communicating with the juorors, are not called to give testimony and no sufficient reason is given for the failure to call them. The maintenance of this principle, bottomed on the duty of the courts to be diligent in the maintenance of the purity of the verdict of the jury, far outweighs the inconvenience incident to a retrial of the appellant in this appeal. For these

reasons, I concur in the opinion of Judge Hawkins which is on file with the record.

LATTIMORE, JUDGE (dissenting).—My associates are reversing this case for alleged misconduct of the jury, that is, because it was claimed that the jurymen were conversing with, or being conversed with by, an outsider. I emphatically dissent, and assert:

First, that all that was said by or to any juror was in testimony before the trial court when he passed on the motion for new trial.

Second, that the testimony heard entirely refuted and overcome any idea that the case was referred to or discussed.

Third, that it showed but the innocent act of an old man coming down the street to where a group of other men were, to whom he spoke, saying "Good morning," and making some remark about the weather.

Fourth, that not a single juror said a word to him.

Fifth, that when told by the officer in charge that this was a jury, the old man apologized, and that this ended the episode.

Sixth, that in holding this not a sufficient showing to call for the granting of a new trial under subdivisions 7 and 8 of article 753, C. C. P., the trial court acted correctly, and within his discretion.

The record on the point involved is short and undisputed. Appellant introduced one juror Kyle on the hearing of the motion for new trial, who swore that, while the jury were in front of a cafe, juror Everett called his attention to an old like gentleman talking to Mr. Farmer (another juror). Kyle testified: "He talked to Mr. Farmer, and then went across on the other side and talked to Mr. Harris (another juror). I couldn't hear what was said." Cross-examined Kyle testified: "I said that over on the north side of the American Cafe there was some one SPEAKING to one or two of the jurors, but I don't know who the person was or anything he said." This was all the testimony offered by appellant in support of his claimed conversation. I take it that the juror spoke the absolute truth in what he said in his cross-examination, and that his use of the word "talked" in his direct testimony was but a careless statement of what occurred.

In rebuttal the state called juror Farmer, who pointedly swore that he did not discuss this case with any person near the American Cafe while the case was on trial. Cross-examined by appellant, he testified that, when the jury came out of the cafe, Judge Fulton, an elderly man, came along and saluted,

and said, "Good morning," and made some remark about the weather; that witness was the closest juror to Fulton, but he made no reply or answer to Fulton, and passed on without saying anything to him. Juror Harris was near witness Farmer, but Farmer did not know who Fulton was saluting, or whether he greeted Harris or not. The state introduced juror Harris, who testified that no one during said trial spoke of the case to him. Cross-examined, he testified that, after eating breakfast at the American Cafe, the deputy sheriff went to the door and stood until the jurors got out. Harris said when he walked out he stepped aside and was looking in a window, and Mr. Fulton came along and started to speak to him, and Deputy Sheriff Smith stopped him. When Mr. Smith told Mr. Fulton these men were the jury, Fulton apologized, and the jury went on to the courthouse.

Article 671, C. C. P., directs that no person shall be permitted to converse with a juror after he has been impaneled, except in certain instances, and that no person shall be permitted to converse with a juror about the case on trial. This article was part of the old Code, as was a later article, 753, C. C. P., which deals directly and specifically with new trials, and starts out with this declaration: "New trials, in cases of felony, shall be granted for the following causes, and for no other." Subdivisions 7 and 8 of said article are as follows:

"7. Where the jury, after having retired to deliberate upon a case, have received other testimony; or where a juror has conversed with any person in regard to the case. * * *"

"8. Where, from the misconduct of the jury, the court is of opinion that the defendant has not received a fair and impartial trial. It shall be competent to prove such misconduct by the voluntary affidavit of a juror; and the verdict may, in like manner be sustained by such affidavit."

The same authors having written article 671, supra, and article 753, supra, it must be at once apparent that they intended to bring forward into said subdivision 7 so much of article 671 as would and should be ground for new trial in a felony case, viz: "Where a juror has conversed with any person in regard to the case," and that in any given case the determination of an issue made as to whether any person talked to a juror, or was talked to by a juror—when relied on as ground for new trial—must be governed by the rules laid down in subdivision 8 of said article.

In said subdivision 8 the Legislature plainly say that mis-

conduct by a jury may be proven by the voluntary affidavit of a juror, and that the verdict may be sustained in like manner. Evidently responding to this, appellant sought to prove misconduct by the testimony alone of juror Kyle. Having based his case on the testimony of one juror alone, and said juror having testified that all he saw take place was that an old man spoke to jurors Farmer and Harris, it was not only competent but sufficient for the state to introduce those two gentlemen, who each testified that he said nothing, and that old Judge Fulton, not knowing that he was speaking to jurors, said, "Good morning," and spoke of the weather, and that this was all that took place. It was not claimed or proven that any one conversed with the jurors about the case. Nor, in the opinion of the writer, was it shown that an outsider "conversed with any juror." It was not even claimed that any juror conversed with an outsider. Nor do I find room for questioning the truthfulness of the staetments of jurors Farmer and Harris. They were guilty of no misconduct. They neither spoke to Fulton, nor stood and listened to him, nor consented that he should say "Good morning" to the group.

To the writer it seems beyond comprehension that on any such facts as these a reversal of a felony case should be ordered because the state did not call Fulton or Deputy Sheriff Smith. Appellant has the laboring oar to show misconduct of the jury. Absolutely the only testimony produced by him was that of a juror who went no further than to say that he saw some one speaking to one or two of the jurors. This he said was on a public street, where the whole jury was, and in the presence and supposedly the hearing of an officer. I find it impossible to believe that men become unworthy of belief to whom is imputed no violation of any statute merely because they were on a jury. Their own district judge believed them, and I think him well within his discretion. These jurors were not attempting to explain any misconduct of theirs, but wholly denying misconduct and stating facts according exactly with the testimony of the juror offered by appellant as making out his case of misconduct.

If there be any decision in this state holding that under such facts this case should be reversed, it should be promptly overruled, for there could be no more dangerous ruling made than the one here indicated. Probably not a jury walks down a city street to its meals that some one, ignorant of its character, does not speak to or greet some member. Many cases are found in our books such as appears in Murphy v. State, 40

S. W., 978, where a stranger rode past a jury out for a walk and called out and said, "Boys don't give him more than ten years." This was testified to without dispute, and it was held not reversible error. Certainly, if it be laid down that merely speaking to a juror on a street will be held reversible error, designing criminals and their friends can and will lay easy predicates for such reversals; and this would be made certain by laying down rules that, even though the juryman spoken to affirm under oath that he did not speak in reply, still this court should hold that, because the man who spoke was not produced, or the officer in charge of the jury was not brought, the case should be reversed.

We may have gotten far from the early holdings, but this seems to be beyond reason. The rule laid down in the early days was that, when the conversation was not shown to be about the case, it would have to be shown that probable injustice had been done. March v. State, 44 Texas, 64; Pickens v. State, 31 Texas Crim. Rep., 554; Shaw v. State, 32 Texas Crim. Rep., 155; Nance v. State, 21 Texas App., 457; Kelly v. State, 28 Texas App., 121; Testard v. State, 26 Texas App., 273; Bailey v. State, 26 Texas App., 706. In the early case of Johnson v. State, 27 Texas, 758, there appears a case so like the one at bar that we quote:

"Article 672, of the Code of Criminal Procedure, expressly forbids the granting of new trials in cases of felony, except for some one of the causes enumerated in said article. There are but two of these which could be tortured into the slightest application to the grounds relied upon to support this motion. 1st. Where a juror has conversed with any one during the progress of the case. In one of the affidavits before the court, it is stated that one of the jurors and the affiant spoke together of the case during the trial. The juror, however, swears that, when approached by the affiant, he informed him that he was upon the jury and could not talk to him. And the truth of this statement is subsequently admitted by the affiant. The juror, then, did not converse about the case, but, on the contrary, refused to do so."

In Testard v. State, supra, Judge Willson said:

"It is well settled that misconduct of a jury is not ground for a new trial unless it is shown to have been such as affected the fairness and impartiality of the trial. (Jack v. State, 20 Texas App., 656; Allen v. State, 17 Texas App., 637; McDonald v. State, 15 Texas App., 493.) No such misconduct on the part of the jury in this case has been made to appear."

In Shaw v. State, supra, Judge Davidson said:

"Remarks to or conversations with jurors do not necessarily constitute ground for granting a new trial. In order to entitle a party to a new trial under such circumstances, it must be made to appear that, by reason of such conversation, injustice was probably done him. It must be such as was calculated to produce a more unfavorable impression upon the mind of the juror than that made by the evidence adduced on the trial, or it must be of such a nature as was calculated to result in probable harm to the accused, in order to constitute a ground for a new trial, or, in case of its refusal, to authorize a reversal on appeal. Nance v. State, 21 Texas App., 457; Bailey v. State, 26 Texas App., 706; March v. State, 44 Texas, 64."

This case is referred to with approval in Douglas v. State, 58 Texas Crim. Rep., 127, opinion by Judge Ramsey, in which the only testimony produced was from jurors.

In Early v. State, 51 Texas Crim. Rep., 382, cited in the majority opinion, a separation of the jury was clearly shown; as was also the fact that, while separated, the jurors talked to many persons, none of whom were brought to testify, nor were all the jurors produced. On the facts of that case this court held that whether the rule of presumptive injury be followed, or the milder one, that the burden was on the state to show what the conversations admittedly had were about, the result would be the same, and a reversal must be ordered. It was further held that it would be a bad precedent to hold that jurors, out of the presence of the court without court permission, might converse with other parties over the phone, and that certainly where such conduct occurs it should be held obligatory on the state to show beyond any question that the jurors were not tampered with. In Mauney v. State, 85 Texas Crim. Rep., 192, the writer of this opinion held that in such case injury should be presumed until the contrary be made to appear to the satisfaction of the court; the trial court primarily, and ultimately this court, but it is further stated that any presumption can be overcome by proof, and that the extent of the burden upon the state in such case extends no further than to satisfy the court that no injury has resulted. This burden was fully met and discharged in the instant case. The assault upon the verdict was made by the testimony of only one juror, and the state brought forward two jurors, named by the juror who made the accusation that he saw an old man speaking to certain jurors and they testified that they were the

nearest jurors to said old man, but did not speak to him, and all that he said was "Good morning," and make some remark about the weather.

Every right of a man on trial ought to be accorded him, but to reverse a case and incur the delay and expense of another trial for no more substantial reason than here appears, seems to the writer going entirely too far and sets a premium on the failure of the appellant to sustain his point by punishing the state for not sustaining it for him.

Newman v. State, 91 Texas Crim. Rep., 559, is cited with reliance in the majority opinion. In that case it was shown without dispute that the jury went to the post office and got from the mail packages and communications whose contents were not disclosed on the hearing of the motion for new trial. Judge Morrow held the presumption of injury not to have been rebutted. The logical reasoning in this regard is in line with our uniform holdings. His statement as to the content of subdivision 7 of article 753, supra, is not entirely in accord with what is in fact there said and made imperative by the commands of said article, which does command that a new trial be granted if a juror has conversed *about the case.*

The case of Toussaint v. State, 92 Texas Crim. Rep., 374, is also cited with reliance in the majority opinion. From Judge Morrow's enumeration in the opinion in that case of what was done by the jury, both with and without the consent of the officer in charge, it was beyond dispute that the presumption of injury was in nowise overcome. He said: "The testimony upon the hearing of the motion for new trial reveals a series of acts upon the part of the jurors, some of them with the consent of the officer in charge, *which were violative* of the statute enacted to preserve the purity of the jury. * * * It too often happens, as in this case, that after the trial it is made to appear that the members of the jury have disregarded the statutes and disobeyed the directions given by the court. *When such things occur,* and were not shown to have been harmless, the courts cannot sanction the verdict without themselves doing violence to the mandatory provisions of the law." With what was said in that case, on the facts of that case, this writer was in hearty accord. However, how different the facts here! Note the statement in the quotation from the Toussaint case, appearing in the majority opinion: *"It having been conclusively shown* that the statutes were violated," etc., etc. It not only was not shown conclusively in the instant case that the statutes were violated, but it was shown to the evident satisfaction of

the trial judge, who knew the witnesses, that they had not violated any statute.

No case can be found in any book holding it a violation of statutes forbidding conversations with a jury for one to walk by a group of men on an open street in the daytime and say, "Good morning—nice weather," and upon being informed by the officer in charge that these were a jury, apologize and pass on, and consequently reversible error. In the case before us no juror conversed with any person. No outsider conversed with any juror. A mere salutation is not such conversation as is contemplated by the statute.

Expressions used in cases where there have been admitted or proven violations of the statutes, are rightly applicable only in cases on facts like those then under consideration, and should not be used to justify a holding here that the trial court exceeded his discretion in concluding that the testimony of Farmer and Harris showed that no prejudice could possibly have resulted, and that they had violated no statute. Certainly to so hold would wrongfully bring these men in the category of those who might be tempted to falsify in order to exonerate themselves when guilty of wrongdoing, and would reflect on their testimony, and upon the trial court who accepted it as true, when the only reason for such reflection would rest upon the fact that the nearest jurors to the old man who came by were the only ones called to testify. I think this fundamentally wrong, and that in cases on facts like these there should be no hesitation on our part to accept as correct the judgment of the trial court who knew the witnesses and was in position vastly better than ours to pass on their testimony.

The facts in Hamilton v. State, 83 Texas Crim. Rep., 90, discussed in the majority opinion, were very like those here, as appears from an inspection of the original record found in our files. An elderly man intruded himself upon a group, not knowing them to be a jury, just as Fulton did here, made a few remarks of a wholly harmless nature, and, upon learning that he was talking to a jury, he excused himself and left, but came back and further apologized. He was used as a witness, but, if there be anything in the principle of rejecting the testimony of those who have themselves done wrong in the matter under investigation, neither his testimony, nor that of Fulton in the instant case, should have been taken as a basis for the finding of the trial court. The facts in the Hamilton case show much more transgression of the rules than appears in the instant case. The jury in that case were taken to a supper, and

one of their number was shown to have talked to another party who was not used as a witness, but the juror testified that nothing was said about the case. A woman who waited on the table of the jurors testified that she talked with them, but not about the case, but the conclusion of the trial judge that no harm resulted was upheld by us.

In Patterson v. State, 106 Texas Crim. Rep., 553, cited in our original opinion, and discussed in the majority opinion, we have an exactly similar case on principle as the one here. In the Patterson case a juror spoke to an outsider, who made no reply. In the case at bar an outsider spoke to a juror who made no reply. In the Patterson case we accepted the statement of the outsider, who had been guilty of no wrong, and said in our opinion: "This is not 'Conversing with a juror,' which is forbidden in article 671, Code of Cr. Proc., 1925. Unless and until misconduct is shown by the testimony, no burden is imposed upon the state which it must rebut." In the case at bar the trial court accepted the testimony of two good men who had done no wrong, who said that an innocent old man who did not know they were jurors spoke to them, but they made no reply, and he apologized, and that ended the episode. I wrote in the Patterson and here take occasion to repeat what I there said as applicable: "This is not 'conversing with a juror,' which is forbidden in article 671, Code Cr. Proc., 1925," and it certainly is no transgression of article 753 which authorizes a new trial on such ground only when the conversation is about the case. I see nothing in the discussion of the Newton case, 114 Texas Crim. Rep., 537, justifying its characterization as in any sense presenting an unusual situation, and therefore presumably justifying a stretch of the rules under discussion here. In that case an outsider brought refreshments to the jury room. The only conversation had was testified to by a juror and appeared to be wholly harmless. I think the correct legal and common sense conclusion was reached in the Newton case.

It might be interesting to note the growth and gradual departure from the original holding in regard to the necessity for introducing the testimony of outsiders in cases where jurors have been unquestionably guilty of a violation of the rules forbidding separation, receiving other testimony, discussing the failure of the accused to testify, conversing with outsiders, etc., etc. I do not believe any case will be found in the books showing clearly that the jurors themselves were without guilt in the matter under investigation, which would lay down the rule

that their testimony should not be accepted as sufficient by the trial court, and that, whenever it is shown that some outsider spoke to the jury, none of whom replied, a reversal will be ordered because the outsider was not produced.

Believing that a dangerous precedent is being established with whose soundness I can not agree, I respectfully record my dissent.